David J. FARLEY, Plaintiff,

v.

**WISCONSIN EVANGELICAL LUTHERAN SYNOD, a Wisconsin Corporation, and Valerie Floeter, Defendants.**

Civ. No. 4–91–586.

United States District Court, D. Minnesota, Fourth Division.

May 24, 1993.

---

Howard L. Bolter, and Sandra R. Boehm & Associates, Ltd., St. Paul, MN, for plaintiff.

W.D. Flaskamp, Leatha G. Wolter, and Meagher & Geer, Minneapolis, MN, for defendant Wisconsin Evangelical Lutheran Synod.

## ORDER

DOTY, District Judge.

This matter is before the court on defendant Wisconsin Evangelical Lutheran Synod's ("WELS") motion for summary judgment. Based on a review of the file, record and proceedings herein, the court grants WELS' motion.

1. WELS is a non-profit church organization dedicated to the extension of the doctrine and practice of the Evangelical Lutheran Church.

2. WELS subsidized the Bakersfield Exploratory.

## BACKGROUND

WELS[1] employed plaintiff David Farley as pastor of the Peace Lutheran Church of Bakersfield, California ("Exploratory").[2] Farley's duties included maintaining the Exploratory's financial records and submitting requests to WELS for reimbursement for the expenses the Exploratory incurred.

In 1990, the Exploratory applied for mission status. In reviewing an Exploratory's request for mission status, the WELS Home Mission Board ("Board") evaluates the history of the exploratory, the future potential of the exploratory and the potential of the exploratory pastor. An exploratory is expected to grow into a viable congregation capable of existing without a subsidy within five years after being granted mission status.

On September 24, 1990, the Board denied the Exploratory's request for mission status. The Board determined that the Exploratory failed to demonstrate that it would grow into a self-sustaining congregation. Moreover, the Board determined that Farley did not possess the skills needed to facilitate the transition from exploratory to mission status. On September 30, 1990, the Board ceased subsidizing the Exploratory and, in effect, although neither party specifically so stated, fired Farley.

On August 6, 1991, Farley commenced this defamation action.[3] Farley contends that WELS published both oral and written false and defamatory statements about him during its attempts to remove him from the Exploratory. Farley further contends that those damaging statements have irreparably damaged his reputation and professional status.

WELS now moves for summary judgment, raising several grounds in support of its motion. First, WELS contends that the court lacks jurisdiction over this matter because it is a religious dispute. Second, WELS contends that even if the court determines that it has jurisdiction, its statements regarding

3. Farley's action originally contained a claim against WELS and a separate claim against codefendant Valerie Floeter. Farley subsequently dismissed, without prejudice, his claim against Floeter. *See* Clerk of Court's File 4–91–586, Docket No. 25.

Farley are substantially true or constitute opinion and, therefore, are not actionable. Third, WELS contends that the court should dismiss Farley's defamation claim because he is a public figure and he cannot satisfy the defamation standard applicable to such persons. Fourth, WELS contends that its statements are conditionally privileged and it did not abuse the privilege. Finally, WELS contends that even if it defamed Farley, he can prove no damages. WELS thus requests that the court dismiss Farley's defamation claim.

Farley contends each of WELS' proffered defenses are without merit and fail to protect it from his defamation claim. Farley thus requests that the court deny WELS' motion for summary judgment.

## DISCUSSION

■■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552. With this standard at hand, the court will consider WELS' motion for summary judgment.

■ The First Amendment to the United States Constitution provides, in part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." Based on that amendment, the United States ·Supreme Court has determined that courts generally may not inquire into a religious organization's activities on matters of religious doctrine or authority and that courts lack subject matter jurisdiction over most disputes stemming from a religious organization's actions.

> [T]he First and Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters. When this choice is exercised and ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decisions as binding upon them.

*Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 721–25, 96 S.Ct. 2372, 2386–87, 49 L.Ed.2d 151 (1976); *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church,* 344 U.S. 94, 116, 73 S.Ct. 143, 154, 97 L.Ed. 120 (1952) ("religious organizations ... [have] an independence from secular control or manipulation—in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine"); *Watson v.*

*Jones,* 80 U.S. (13 Wall.) 679, 727, 20 L.Ed. 666 (1871) ("[W]henever the questions of discipline, or of faith or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them."). Moreover, the court lacks jurisdiction over an action if the inquiry it would have to undertake to resolve the issues before it requires analysis of the religious organization's decision making process or excessive entanglement in the organization's religious affairs. *See e.g., Scharon v. St. Luke's Episcopal Presbyterian Hosp.,* 929 F.2d 360, 363 (8th Cir.1991) (court lacked jurisdiction to review sex and age discrimination claims against church because inquiry into the dispute would cause excessive entanglement and violate the Free Exercise Clause) (citations omitted); *Rayburn v. General Conference of Seventh–Day Adventists,* 772 F.2d 1164, 1167–71 (4th Cir.1985) (court lacked jurisdiction to review sex and race discrimination claims against church because inquiry into the dispute would cause excessive entanglement and violate the Free Exercise Clause), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986).

In *Scharon,* a female Episcopal priest filed an action alleging that she was discriminatorily terminated on the basis of her sex and age in violation of the Age Discrimination in Employment Act of 1987, 29 U.S.C. § 630 *et seq.,* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. Scharon,* 929 F.2d at 361. The defendants argued that resolution of Scharon's claims would foster excessive entanglement with religion in violation of the First Amendment. Scharon argued that the court could avoid excessive entanglement "because the defendants' claims that were the basis for her termination are merely a pretext for the actual motive behind her dismissal." *Id.* at 363. Scharon thus reasoned that "government involvement with religion ... [could] be avoided by focusing solely on the issues of age and sex discrimination." *Id.*

The Eighth Circuit rejected Scharon's argument. The court stated that:

"[R]esolution of such charges ... will necessarily involve inquiry into the good faith position asserted by the clergy-administrators.... It is not only the conclusions that may be reached ... which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry."

*Id.* The court thus concluded that "[t]o allow Scharon's case to continue would necessarily lead to the kind of inquiry into religious matters that the First Amendment forbids." *Id.* The court further concluded that resolution of the merits of Scharon's claim would also contravene the Free Exercise Clause of the First Amendment.

Personnel decisions by church-affiliated institutions affecting clergy are per se religious matters and cannot be reviewed by civil courts, for to review such decisions would require the courts to determine the meaning of religious doctrine and canonical law and to impose a secular court's view of whether in the context of the particular case religious doctrine and canonical law support the decision the church authorities have made. This is precisely the kind of second-guessing of decision-making by religious organizations that the Free Exercise Clause forbids.

*Id.* The Eighth Circuit thus affirmed that district court's dismissal of the action. *Id.*

The Eighth Circuit is not alone in finding that courts generally should not resolve the merits of actions arising from disputes involving religious organizations because doing so would run afoul of the First Amendment.[4] A number of other courts have considered the constitutional propriety of resolving various types of claims against religious organizations and have determined that they lack jurisdiction to resolve those disputes. *See e.g., Lewis v. Seventh Day Adventists Lake Region Conference,* 978 F.2d 940, 942–43 (6th Cir.1992) (court lacked jurisdiction over

---

4. There are exceptions to this general rule. *See e.g., Drevlow v. Lutheran Church, Missouri Synod,* 991 F.2d 468 (8th Cir.1993); *Minker v. Baltimore Annual Conference of United Methodist Church,* 894 F.2d 1354, 1359 (D.C.Cir.1990); *Hutchison v. Thomas,* 789 F.2d 392, 395 (6th Cir.1986); *Rayburn,* 772 F.2d at 1171. However, no exception is applicable in this case.

claims of breach of employment contract, promissory estoppel, intentional infliction of emotional distress and a derivative spousal claim because resolution of those claims would violate the Free Exercise Clause); *Minker v. Baltimore Annual Conference of United Methodist Church*, 894 F.2d 1354, 1358–60 (D.C.Cir.1990) (on motion to dismiss the court determined that it lacked jurisdiction to resolve age discrimination claim and breach of contract claim based on church's written constitution because resolution of those claims would entail inquiry into ecclesiastical policy, but remanded claim based on alleged oral contract for determination of whether resolution of that claim could be had without impermissibly requiring the court to inquire into ecclesiastical matters); *Hutchison v. Thomas*, 789 F.2d 392, 395–96 (6th Cir.) (dismissing various claims, including defamation claim, against church because resolution of the disputes would require inquiry into ecclesiastical decisions in violation of Free Exercise Clause), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986); *Natal v. Christian and Missionary Alliance*, 1988 WL 159169 at *4, *8 (D.P.R. Dec. 15, 1988) (court dismissed a wrongful termination claim because termination decisions are exclusively within purview of the church and would have dismissed a libel and slander claim had such a claim been properly asserted because "[a]ny such claim would arise and would be inextricably intertwined with the . . . [plaintiff's] alleged dissatisfaction with defendant's interpretation and application of the manual of the church"), *aff'd,* 878 F.2d 1575, 1577–78 (1st Cir.1989); *Black v. Snyder,* 471 N.W.2d 715, 720 (Minn.Ct. App.1991) (finding resolution of defamation claim against church would require review of the church's reasons for discharge, "an essentially ecclesiastical concern . . ." and the resulting "impermissible entanglement of doctrinal and disciplinary issues . . . is sufficient to support the dismissal of . . . [such a] claim.").

Farley argues that this case is distinguishable from a case like *Scharon* because he does not contest WELS' decision to terminate, which he apparently admits is an ecclesiastical concern protected from court review by the First Amendment. Rather, Farley argues that resolution of his defamation claim would implicate no concern expressed in the First Amendment because an inquiry into the dispute requires no examination of church procedures or ecclesiastical decisions. Farley contends that the court need only analyze WELS' "ultimate conduct and whether such conduct was defamatory." Memorandum in Opposition at 9. In support of his argument, Farley relies on *First Baptist Church of Glen Este v. State of Ohio*, 591 F.Supp. 676 (S.D.Ohio 1983) and *Black v. Snyder,* 471 N.W.2d 715 (Minn.Ct.App.1991). However, examination of those cases reveals no support for his argument.[5]

Although factual scenarios might exist where resolution of a defamation action against a religious organization would not require the court to undertake an inquiry in violation of the First Amendment, this case does not present such a situation. Farley's defamation claim challenges WELS' authority to request Exploratory records pursuant to its internal procedures and to comment on Farley's actions and abilities as a WELS minister. Resolution of Farley's defamation claim would require the court to review WELS' bases for terminating him, an ecclesiastical concern, and the veracity of WELS' statements. The court determines that such an inquiry would implicate the concerns expressed in the First Amendment. Based on that determination, the court concludes that it has no jurisdiction over this matter.

Accordingly, **IT IS HEREBY ORDERED** that WELS' motion for summary judgment is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

5. Farley relies on a portion of the *Black* opinion in which the court discusses whether application of Minnesota's decisional law governing defamation itself violates the First Amendment. *Black,* 471 N.W.2d at 719. The court concluded that those laws are content neutral and do not "expressly mandate or prohibit religious conduct or beliefs. . . ." *Id.* That conclusion, however, has no impact on whether inquiry into the merits of Farley's defamation claim would require the court to undertake an impermissible review of WELS' reason for discharging him.