64 F.3d 664
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Rev. Lloyd YAGGIE, Plaintiff-Appellant,
v.
INDIANA-KENTUCKY SYNOD, EVANGICAL LUTHERN CHURCH IN AMERICA,
Defendant-Appellee.
 No. 94-5892.
 United States Court of Appeals, Sixth Circuit.
 Aug. 21, 1995.
 
 Before: CONTIE, RYAN, and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Lloyd Yaggie, appeals the dismissal for lack of subject-matter jurisdiction of this action against defendant-appellee, the Indiana-Kentucky Synod, Evangical Lutheran Church in America, for common law defamation resulting from a conflict within the Resurrection Lutheran Church.
 
 FACTS
 
 2
 Plaintiff, Pastor Yaggie, the minister at Resurrection Lutheran Church ("the church") claims he was defamed by two agents or employees of defendant, Indiana-Kentucky Synod, during the course of defendant's attempts to reconcile recurring conflicts between Pastor Yaggie and his parishioners at the church. The turmoil at Resurrection Lutheran began soon after Pastor Yaggie accepted a "call" to ministry in 1990 and increased in the spring of 1992. At that point the defendant was asked to intervene in helping the parties mend their differences.
 
 
 3
 In order to understand the attempts at reconciliation, it is necessary to understand the structure of the government of the Lutheran Church. Each Lutheran congregation is incorporated as a not-for-profit entity, governed by either a three or twelve member Church Council,[1] which can adopt a constitution and by-laws, including provisions for third-party intervention in the case of conflicts between minister and congregation. Many Lutheran congregations, including Resurrection Lutheran, also have a Mutual Ministry Committee, whose primary mission is to assist the minister and occasionally intervene in congregational disputes. Nationally, congregations within a geographical area are grouped together into synods. Each synod is governed by a bishop, who oversees all congregations and clergy within the region. Resurrection Lutheran is part of the Indiana-Kentucky Synod (hereinafter, "IN-KY Synod"), presided over by Bishop Ralph Kempski. Pastor Lowell Buss is one of four cleric-assistants to Bishop Kempski.
 
 
 4
 The conflict that developed between Pastor Yaggie and his parishioners was based on communication problems and differences in management style. The difficulties were so grave by the spring of 1992 that the Church Council requested the intervention of Pastor Buss pursuant to the Council's constitution and bylaws. Pastor Buss attended a meeting of the Church Council to discuss options for reconciliation between Pastor Yaggie and Resurrection Lutheran's members. The Council voted to have Pastor Buss work with the Mutual Ministry Committee to "mediate" between the two parties. Over the next several weeks, Pastor Buss and the Mutual Ministry Committee met with members of the congregation who were experiencing difficulties with Pastor Yaggie. Pastor Buss was given the responsibility of reporting to the Church Council on the content and progress of these meetings.
 
 
 5
 In July 1992, Pastor Buss presented to the Mutual Ministry Committee a draft of the report he proposed to submit to the Church Council. A single paragraph of that report is the subject of Pastor Yaggie's first defamation claim:
 
 
 6
 OBSERVATION: A significant number of members have experienced the Pastor as being "aloof;" as being "the Boss," as being dogmatic; as not being open to the persons who disagree or have different viewpoints, even to the point of feeling that they are dismissed from friendship; as not always hearing what the other person is trying to say; as having particular difficulty in appreciating women as equals; as one who talks negatively about persons to others (behind their backs), sometimes close to the point of breaking confidentiality.
 
 
 7
 Pastor Yaggie opposed the inclusion of this paragraph in the final report to the Church Council. At his request, the paragraph was deleted and the original draft was seen only by members of the Mutual Ministry Committee.
 
 
 8
 Following the failure of this first attempt at reconciliation, the Church Council decided to employ a second dispute resolution process provided for in the constitutions of the church and the IN-KY Synod. Resurrection Lutheran requested, and Bishop Kempski promptly appointed, a three-member Advisory Committee, who pursuant to the church constitution, met with members of the congregation at twenty-minute intervals to assess the situation. This Committee then met with Bishop Kempski, Pastor Yaggie, and Mrs. Yaggie to discuss the meetings and make recommendations for action. Pastor Yaggie's second claim of defamation is a result of the Advisory Committee report submitted to the church congregation. He objected to the phrase "the Advisory Committee recommends that his [Yaggie's] intention to resign be honored...." Yaggie asserts this language is defamatory and inaccurate.
 
 
 9
 Pastor Yaggie's third and final claim concerns a statement allegedly uttered by Bishop Kempski concerning the meaning of the report. Pastor Yaggie asserts that when Bishop Kempski was asked about the Committee's recommendation "that appropriate consultation for professional development and personal healing be offered," he responded by saying, "It means Pastor Yaggie's going to Saint Barnabas for psychiatric treatment and evaluation." Pastor Yaggie claims this statement was repeated verbatim at different church meetings.
 
 
 10
 On March 23, 1993, plaintiff filed suit in state court. Defendant timely removed the action to the United States District Court for the Western District of Kentucky. Upon defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the district court dismissed plaintiff's complaint for lack of subject matter jurisdiction, finding that the court's intervention was prohibited by the First and Fourteenth Amendments to the United States Constitution. Plaintiff timely filed this appeal.
 
 II.
 
 11
 In dismissing plaintiff's complaint for lack of subject matter jurisdiction, the district court relied on the Supreme Court's opinion in Watson v. Jones, 13 Wall. 679 (1872), in which the Court mandated over a century ago that federal courts were not to delve into matters concerning the inner ecclesiastical workings of the church. The Court stated:
 
 
 12
 But it is a very difficult thing where a subject-matter of dispute, strictly and purely ecclesiastical in its character,--a matter over which the civil courts exercise no jurisdiction,--a matter which concerns theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them,--becomes the subject of its action. It may be said there, also, that no jurisdiction has been conferred on the tribunal to try the particular case before it, or that, in its judgment, it exceeds the powers conferred upon it or that the laws of the church do not authorize the particular form of proceeding adopted; and in a sense often used in the courts, all of those may be said to be questions of jurisdiction.
 
 
 13
 Watson v. Jones, 13 Wall. 679, 733, 20 L.Ed. 666 (1872).
 
 
 14
 Since the opinion in Watson, the Supreme Court has consistently refused to address church controversy. In Serbian Eastern Orthodox Diocese, etc. v. Milivojevich, 426 U.S. 696 (1976), the Court cited Watson for the proposition that federal courts lack jurisdiction to investigate whether proceedings pursuant to internal regulations of the church are procedurally or substantively defective. Id. at 711. The Serbian Court declined to interfere with the decision of the Holy Synod of the Serbian Orthodox Church to suspend and ultimately remove a bishop of the church, stating:
 
 
 15
 Consistently with the First and Fourteenth Amendments, "civil courts do not inquire whether the relevant [hierarchical] church governing body has power under religious law [to decide such disputes].... Such a determination ... frequently necessitates the interpretation of ambiguous religious law and usage. To permit civil courts to probe deeply enough into the allocation of power within a [hierarchical] church so as to decide ... religious law [governing church policy] ... would violate the First Amendment in much the same manner as civil determination of religious doctrine.
 
 
 16
 Id. at 708-09. It is thus firmly established that in the absence of fraud, collusion, or arbitrariness, the decisions of the proper church tribunals on matters purely ecclesiastical, although affecting civil rights, are accepted as conclusive in litigation before the secular courts. Gonzalez v. Archbishop, 280 U.S. 1 (1929). The general rule is that federal courts should be loath to assert jurisdiction over internal church disputes. Serbian, 426 U.S. at 709-10; Presbyterian Church v. Hull Church, 393 U.S. 440, 449 (1969).
 
 
 17
 Based on these cases, the district court in the present case stated:
 
 
 18
 The importance we glean from each opinion is the [Supreme] Court's extreme reluctance to interfere with the internal workings of the church. We are also cognizant of the fact that, in this case, the alleged defamatory statements do not express any religious principles or beliefs. However, the fact remains that this action is the result of a conflict confined within the Resurrection Lutheran Church, concerning the employment relationship of its minister, and addressed in accordance with the church constitution. As will be discussed, we find these circumstances dictate our lack of jurisdiction over the matter.
 
 
 19
 The district court reasoned that a minister's employment relationship is governed by ecclesiastical rule and falls within the type of religious controversy in which courts do not intervene as mandated by the First Amendment.
 
 
 20
 We agree. In Lewis v. Seventh Day Adventists Lake Region Conf., 978 F.2d 940, 942 (6th Cir.1992), this court held that civil court jurisdiction over a ministerial employment dispute is impermissible because such intervention would excessively inhibit religious liberty in violation of the First Amendment. Only on the rare occasion when there exists a compelling government interest in the regulation of public health, safety, and general welfare have courts interfered in ecclesiastical matters. Simpson v. Wells Lamont Corporation, 494 F.2d 490, 493 (5th Cir.1974). We do not find such a compelling interest in the present case.
 
 
 21
 The interaction between a church and its pastor is not only an integral part of church government, but also all matters touching this relationship are of ecclesiastical concern. Id. at 493-94. It makes no difference when the ecclesiastical dispute fails to touch on church or religious doctrine. Id. "Evaluation of the gifts and graces of a minister must be left to ecclesiastical institutions," Minker v. Baltimore Annual Conf., 894 F.2d 1354, 1357 (D.C.Cir.1990), and there is no exception to the bar against interfering with matters of church administration. Id.
 
 
 22
 Moreover, this court has previously addressed the issue of whether to exercise federal jurisdiction over a defamation claim involving a pastor and his church in Hutchison v. Thomas, 789 F.2d 392 (6th Cir.1986). In Hutchison, an ordained Methodist minister challenged his enforced retirement under church disciplinary rules, asserting claims for defamation, intentional infliction of emotional distress, and breach of contract. Several hearings had been conducted concerning his ability to relate properly to his congregation. The plaintiff in Hutchinson alleged that throughout the proceedings, the defendants misrepresented his church relationships and defamed him by declaring him "unappointable" due to recurring problems with local congregations. The Sixth Circuit held that this court could not constitutionally intervene in such a dispute because the plaintiff's claims related to his employment and status as a minister of the church. Id. at 396. The action therefore concerned internal church discipline, faith, and organization, all of which are governed by ecclesiastical rule, custom or law, which the federal courts lack jurisdiction to review.
 
 
 23
 Hutchinson is similar to the present case as plaintiff, Yaggie, in essence, is disputing an employment decision and this case concerns the intimate relationship between a pastor and his congregation. In an attempt to resolve an inner church conflict, Lutheran leadership investigated congregational attitudes toward Pastor Yaggie. The investigation was done in accordance with the constitutional provisions of the church, and the alleged defamatory statements were made in connection with the mediation process and strictly within the confines of the church. The alleged defamation concerned the minister's current and future employment relationship with the church. As such, these are matters of ecclesiastical concern, over which this court has no jurisdiction. Therefore, the district court did not err in granting defendant's motion to dismiss for lack of subject matter jurisdiction and is hereby AFFIRMED.
 
 
 
 [1]
 Resurrection Lutheran employed a three-member Church Council consisting of a president, vice president and treasurer