Richard **SEEFRIED**, individually; James Seefried, individually; and Colorado Digital Systems, LLC, a Colorado business entity, Plaintiffs–Appellants,

v.

Hans **HUMMEL**; Kim Hummel; Jon Budish; Fort Collins Bible Church; and Matt Homolka, Bob Herd, Dick Berg, Dan Stowell, and David Bischoff, individually and as members of the Board of Directors of the Fort Collins Bible Church, a Colorado entity, Defendants–Appellees.

No. 04CA0960.

Colorado Court of Appeals, Div. A.

July 28, 2005.

Rehearing Denied Oct. 13, 2005.

Certiorari Denied Sept. 11, 2006.

---

G. William Beardslee, Fort Collins, Colorado, for Plaintiffs–Appellants.

Dwyer, Ringenberg and Funk, P.C., James E. Ringenberg, Richard D. Beller, Fort Collins, Colorado, for Defendants–Appellees.

DAVIDSON, Chief Judge.

Plaintiffs, Richard Seefried, James Seefried, and Colorado Digital Systems, LLC (CDS), appeal from the trial court's judgment partially dismissing their complaint against defendants, Hans Hummel, Kim Hummel, John Budish, Fort Collins Bible Church (the church), and Matt Homolka, Bob Herd, Dick Berg, Dan Stowell, and David Bischoff, individually and as members of the board of directors of the church. We dismiss the appeal in part and otherwise affirm.

It is undisputed that plaintiffs Richard and James Seefried were employed with the church, respectively, as senior pastor and associate pastor. It is also undisputed that James Seefried owns CDS and previously had hired defendants Hans Hummel, Kim Hummel, and John Budish, who were all church members, to work there. The first amended complaint alleges that these defendants "engaged in certain activities, which resulted in their cessation as employees [with CDS]." That dispute subsequently became "an issue within the [church]." The parties agree that, after several church meetings, the church terminated Richard Seefried's employment, although it is unclear whether, at that time, James Seefried had already resigned as associate pastor. The complaint alleges that the church and its board of directors unlawfully discharged Richard Seefried as pastor based on this "secular non-church issue."

The complaint sets forth three claims for relief. The first claim alleges that defendants Hans Hummel, Kim Hummel, and John Budish made a series of "slanderous, libelous, false, fraudulent, and defamatory" statements to third persons concerning plaintiffs CDS and James Seefried. The third claim alleges that defendants wrongly refused to pay Richard Seefried's severance and health care benefits following his termination.

It is plaintiffs' second claim that is at issue here. In this claim, plaintiffs allege that Richard Seefried had been employed with the church subject to an "express indefinite contract" that contained "reciprocal duties of good faith and fair dealing." They further allege that, in violation of the church's constitution and its contract of employment with Richard Seefried, the church and the board arranged a "public meeting" with its members to discuss apparent discomfort with him as their pastor. Plaintiffs claim that, in violation of internal church procedure and its contract with Richard Seefried, all defendants participated in the meeting, signed petitions, or made false, slanderous, or libelous statements against plaintiffs, and that Richard Seefried was unlawfully terminated as a result of this meeting. Plaintiffs claim that as a consequence, all defendants are liable for "slander, libel, the intentional interference with business relationships, and outrageous conduct" for the statements made during this meeting.

Attached as an exhibit to the complaint is a transcript of the church meeting at which the alleged defamatory statements were made, and defendants do not dispute its accuracy. Defendants also do not dispute that the church meeting was held to discuss concerns about the pastor, that the statements were made, that a petition seeking removal of Richard Seefried was signed and submitted to the board, and that Richard Seefried was terminated as a result of the church meeting.

Defendants filed motions to dismiss all of plaintiffs' claims pursuant to C.R.C.P. 12(b)(1), for lack of subject matter jurisdiction, and C.R.C.P. 12(b)(5), for failure to state a claim upon which relief can be granted. The court granted the motion in part, dismissing for lack of subject matter jurisdiction plaintiffs' defamation and related claims based on the statements published at the church meeting. The court also dismissed without prejudice the fraud claim set forth in the first claim for relief pursuant to C.R.C.P. 9(b).

The trial court granted C.R.C.P. 54(b) certification, and plaintiffs appeal.

## I.

As an initial matter, we do not address plaintiffs' argument that the trial court erred by granting defendants' motion for a more definite statement on plaintiffs' claim of fraud. The ruling dismissing the fraud claim was without prejudice and, therefore, did not constitute a final judgment. *See Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 571 (Colo.App.2003) (trial court's dismissal of an action without prejudice generally does not constitute a final judgment for purposes of appeal). Thus, it is not reviewable on appeal. *See* C.A.R. 1 (subject to exceptions not relevant here, appeal may be prosecuted only from final judgment or order); *People v. People in Interest of G.L.T.*, 177 Colo. 196, 493 P.2d 20 (1972). To the extent the trial court intended its C.R.C.P. 54(b) certification to apply to this claim, we are not bound by that determination. *See Pub. Serv. Co. v. Linnebur*, 687 P.2d 506, 508 (Colo.App.1984) (trial court's C.R.C.P. 54(b) certification is not binding on appellate court), *aff'd*, 716 P.2d 1120 (Colo.1986).

This portion of the appeal is dismissed. However, because the issue may arise on remand, we note that in their briefs on appeal, plaintiffs asserted that they did not intend to allege a fraud claim against defendants.

## II.

We do not agree with plaintiffs' threshold contention that the trial court improperly determined the issue of subject matter jurisdiction without an evidentiary hearing.

C.R.C.P. 12(b)(1) permits a trial court to make its own factual findings in determining subject matter jurisdiction, and to hold an evidentiary hearing to resolve any factual dispute upon which the existence of jurisdiction may turn. *Medina v. State*, 35 P.3d 443, 452 (Colo.2001). However, where the matter can be resolved on undisputed facts, as here, a hearing is unnecessary. *See Podboy v. Fraternal Order of Police, Denver Sheriff Lodge 27*, 94 P.3d 1226, 1229 (Colo. App.2004) ("If all relevant evidence is presented to the trial court and the underlying facts are undisputed, the trial court may decide the jurisdictional issue as a matter of law without conducting an evidentiary hearing."); *cf. Werth v. Heritage Int'l Holdings, PTO*, 70 P.3d 627, 629 (Colo.App.2003) (trial court must hold an evidentiary hearing to resolve contested issues of fact when a court's jurisdiction is challenged under C.R.C.P. 12(b)(1)).

We review the trial court's C.R.C.P. 12(b)(1) determination, based on undisputed facts, de novo. *See Medina v. State, supra*, 35 P.3d at 452 ("If all relevant evidence is presented to the trial court, and the underlying facts are undisputed, the trial court may decide the jurisdictional issue as a matter of law, in which case appellate review is de novo").

## III.

As relevant here, the court determined that the statements which gave rise to plaintiffs' claims were issued within the "constitutionally protected context" of the First Amendment of the United States Constitution because they occurred during a church meeting that concerned the "investigation, discipline and discharge of Richard and James Seefried." The court, consequently, declined to exercise subject matter jurisdiction over these claims. Plaintiffs contend that this was error as a matter of law. We agree with the trial court.

In certain circumstances, the First Amendment precludes a court from exercising jurisdiction over claims concerning a religious institution's activities on matters of religious doctrine or authority. *See, e.g., Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) (court lacks jurisdiction to investigate whether internal regulatory proceedings of the church were procedurally or substantively defective); *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116, 73 S.Ct. 143, 154, 97 L.Ed. 120 (1952) ("religious organizations [have] an independence from secular control or manipulation, in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine"). The Colorado

Supreme Court has recognized that courts have no authority to determine claims which directly concern a church's choice of minister. *Van Osdol v. Vogt*, 908 P.2d 1122 (Colo. 1996) (court lacked jurisdiction over claims brought by a former minister against a church arising out of the church's decision not to employ the minister).

In *Van Osdol*, the plaintiff minister was terminated by the defendant church and, subsequently, filed a complaint, alleging, as relevant here, claims of illegal retaliation in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–5, et seq., intentional interference with contract, interference with prospective economic advantage, and breach of fiduciary duty. The supreme court found that each claim, if addressed, would require the court to examine the reasoning behind the church's choice of minister. *Van Osdol v. Vogt, supra*, 908 P.2d at 1127 n. 8. The court then determined that the decision to hire or discharge a minister is purely ecclesiastical, is inextricable from religious doctrine, and "is an expression of the beliefs of the church and the 'embodiment' of the religion." *Van Osdol v. Vogt, supra*, 908 P.2d at 1128, 1132; *see also McClure v. Salvation Army*, 460 F.2d 553, 558–59 (5th Cir.1972) ("The relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern."); *Minker v. Baltimore Annual Conference*, 894 F.2d 1354, 1356 (D.C.Cir.1990) (the "determination of 'whose voice speaks for the church' is *per se* a religious matter") (emphasis in original).

Accordingly, the *Van Osdol* court held that once a court is called on to evaluate a religious organization's discipline of its clergy, as was raised by the minister's claims, both the Free Exercise Clause and the Establishment Clause of the First Amendment prohibit further inquiry.

■ However, *Van Osdol* also recognized that the First Amendment is not an absolute bar to all claims against a religious institution and that a minister's claim against a church may be actionable if it can "be ad-dressed without resort to ecclesiastical policy." *Van Osdol v. Vogt, supra*, 908 P.2d at 1128 n. 8, 1129, 1134 ("We do not by this opinion hold that churches are insulated from the law. We do not address various claims that could be brought by a minister against his or her church."); *see also Minker v. Baltimore Annual Conference, supra*, 894 F.2d at 1360–61 (plaintiff's contract claim against church not automatically barred by the First Amendment where claim could potentially be addressed without analysis of church doctrine); *Moses v. Diocese of Colo.*, 863 P.2d 310, 320–21 (Colo.1993) (claim of negligent hiring of a minister is actionable because it does not require interpretation or weighing of religious belief).

Colorado appellate courts have not addressed whether defamation, tortious interference, outrageous conduct, or similar types of claims, brought by a minister against his or her church or church members, are protected by the First Amendment. However, decisions from other jurisdictions that have addressed similar issues provide significant guidance. Based on these authorities, and in light of the policies expressed in *Van Osdol*, we conclude that, under the circumstances here, the trial court properly refused to exercise jurisdiction.

In *Heard v. Johnson*, 810 A.2d 871 (D.C. 2002), the District of Columbia Court of Appeals addressed a pastor's defamation claim brought against the trustees of a church. In a thoughtful opinion, the court first observed:

> Under most circumstances, defamation is one of those common law claims that is not compelling enough to overcome First Amendment protection surrounding a church's choice of pastoral leader. When a defamation claim arises entirely out of a church's relationship with its pastor, the claim is almost always deemed to be beyond the reach of civil courts because resolution of the claim would require an impermissible inquiry into the church's bases for its action.

*Heard v. Johnson, supra*, 810 A.2d at 883.

After thoroughly reviewing the relevant case law, the court determined that, in most defamation cases, "the alleged defamatory

statements did not overtly express any religious principles or beliefs, but all the actions resulted from conflicts 'confined within' the churches involved." *Heard v. Johnson, supra,* 810 A.2d at 884. Concluding that the alleged defamatory statements would require an examination of the church's reasons for dismissal of the plaintiff as pastor, the court declined to exercise jurisdiction over the claim. The court noted that, "it was impossible to consider the plaintiffs' allegations of defamation 'in isolation, separate and apart from the church[s] decision to terminate [the plaintiffs] employment." ' *Heard v. Johnson, supra,* 810 A.2d at 884 (quoting *Jae–Woo Cha v. Korean Presbyterian Church,* 262 Va. 604, 553 S.E.2d 511, 516 (2001)).

Indeed, almost every court that has addressed the issue has determined that such claims could not be examined in isolation. *See Farley v. Wisconsin Evangelical Lutheran Synod,* 821 F.Supp. 1286, 1290 (D.Minn. 1993) ("Resolution of [the plaintiff's] claim would require the court to review [the church's] bases for terminating him, an ecclesiastical concern, and the veracity of [the church's] statements."); *Yaggie v. Indiana–Kentucky Synod Evangelical Lutheran Church,* 860 F.Supp. 1194 (W.D.Ky.1994) (court lacks jurisdiction over a minister's defamation action against his synod based on statements made during resolution of a dispute between the minister and his congregation because such an analysis would have required the court to inquire into the inner ecclesiastical workings of the church), *aff'd,* 64 F.3d 664, 1995 WL 499468 (6th Cir.1995); *Goodman v. Temple Shir Ami, Inc.,* 712 So.2d 775, 777 (Fla.Dist.Ct.App.1998) ("The allegedly defamatory report and tortious interference occurred as part of this religious dispute and would require the trial court to weigh their effect on the board members as compared to the effects of the other considerations which clearly are religious disagreements. Inquiring into the adequacy of the religious reasoning behind the dismissal of a spiritual leader is not a proper task for a civil court."); *Downs v. Roman Catholic Archbishop,* 111 Md.App. 616, 683 A.2d 808, 812 (1996) ("When the conduct complained of occurs in the context of, or is germane to, a dispute over the plaintiff's fitness or suitability to enter into or remain a part of the clergy, however, it is difficult to see how the forbidden inquiry could be avoided. Questions of truth, falsity, malice, and the various privileges that exist often take on a different hue when examined in the light of religious precepts and procedures that generally permeate controversies over who is fit to represent and speak for the church."); *Hiles v. Episcopal Diocese,* 437 Mass. 505, 773 N.E.2d 929, 936 (2002) ("matters arising out of the church-minister relationship, including church discipline, come within the category of religious belief, and thus are entitled to absolute protection"); *Jae–Woo Cha v. Korean Presbyterian Church, supra,* 553 S.E.2d at 516 (the plaintiff's allegations of defamation "cannot be considered in isolation, separate and apart from the church's decision to terminate his employment").

Both *Ogle v. Hocker,* 2005 WL 1349111 (E.D.Mich. No. 02–73200, Mar. 11, 2005), and *Marshall v. Munro,* 845 P.2d 424, 428 (Alaska 1993), in which the courts concluded that the First Amendment did not bar a defamation claim in the ministerial discharge context because the claim could be separated from the actual ministerial termination, are distinguishable. Unlike here, the statements in *Ogle* that gave rise to the plaintiff's claims were published outside of the ministerial employment and internal discipline process. Similarly, although the allegedly defamatory statements in *Marshall* appeared to play a role in the church's decision not to hire the plaintiff, the court's opinion apparently depended on its characterization of the offending statements as separate and apart from the ministerial employment process.

■ Here, however, it is undisputed that the statements at issue were made in the context of a meeting convened by the church and its board for church members to discuss whether Richard Seefried should be terminated as pastor. Indeed, according to plaintiffs, Richard Seefried "was unlawfully and illegally terminated from his contract with defendant Church as a result of this meeting."

It does not matter whether, as plaintiffs allege, the offending statements were secular in nature or that James Seefried was not an associate pastor at the time the statements were made. The statements giving rise to plaintiffs' defamation and other claims relat-

ed directly to a church process that resulted in Richard Seefried's termination as pastor. Accordingly, evaluation of the statements in isolation of this process, with respect to any of plaintiffs' claims here, is not possible.

■ Whether a statement has a defamatory meaning is predicated on context. *See, e.g., Tonnessen v. Denver Publ'g Co.,* 5 P.3d 959, 963 (Colo.App.2000). Thus, the court here would be required to assess in its entirety a church meeting convened by the church to discuss dissatisfaction with, and the possible discharge of, its pastor. *See Heard v. Johnson, supra,* 810 A.2d at 886 ("a court may not [consider the entire manual of grievances against the pastor] because ... it is impossible to analyze the entire manual without reference to the clerical employment dispute").

Similarly, if defendants were to raise a qualified, or "conditional," privilege defense, the court would be forced to determine whether defendants were acting in good faith or with malice. *See Coopersmith v. Williams,* 171 Colo. 511, 516, 468 P.2d 739, 741 (1970). Resolution of this issue would require assessment, at a minimum, of the motives of the church members who uttered the allegedly defamatory statements. Such a determination could not occur without a subjective evaluation of their choice of spiritual leader.

■ Likewise, plaintiffs' claims of outrageous conduct and intentional interference with business relationships cannot be considered separate and apart from the church's termination proceedings. The outrageous conduct claim would require the court to determine whether defendants were acting recklessly or with the intent to cause plaintiffs severe emotional distress. *See, e.g., Culpepper v. Pearl Street Bldg., Inc.,* 877 P.2d 877, 882 (Colo.1994). Plaintiffs' intentional interference with business relationships claim would require the court to determine whether defendants intentionally interfered with plaintiffs' contractual relationships, including those with the church. *See Amoco Oil Co. v. Ervin,* 908 P.2d 493, 500 (Colo.1995). Such inquiries here would necessarily insert a civil court into the basis for the church's choice of its religious leaders.

Furthermore, we have serious concerns that to allow as actionable church members' comments about their church leaders made at church meetings would inhibit the free and open discourse essential to a religious institution's selection of its minister. Such a result could chill expressions of dissatisfaction from church members and thereby intrude upon the autonomy of religious institutions to freely evaluate their choice and retention of religious leaders. *See Yaggie v. Indiana–Kentucky Synod Evangelical Lutheran Church, supra,* 860 F.Supp. at 1199 ("Wisdom mandates that we refrain from dictating to a congregation that if they are unhappy with their religious leader they cannot freely speak their mind. In a mediation process between minister and congregation, all parties should be able to express their innermost feelings without fear of reprisal from the courts."); *Heard v. Johnson, supra,* 810 A.2d at 887 ("Accusations of misconduct, discussions of [a pastor's] misconduct within the church, and the emotional distress and exaggerated language that accompany such activities seem to us to be unavoidable parts of the difficult process by which dissatisfied churches end employment relationships with their pastors."); *Hiles v. Episcopal Diocese, supra,* 773 N.E.2d at 937 ("The First Amendment's protection of internal religious disciplinary proceedings [of a pastor] would be meaningless if a parishioner's accusation that was used to initiate those proceedings could be tested in a civil court.").

## IV.

■ When addressing defendants' motion for sanctions, the trial court stated that "if plaintiffs' appeal of the court's order is unsuccessful, C.R.S. § 13–17–201 mandates a fee award on appeal." The court went on to conclude that it would "reserve judgment on [d]efendants' motion for sanctions" and would "consider [the] motion in light of the appellate findings."

Plaintiffs contend that the trial court's "understanding regarding 'mandatory' attorney fees is" erroneous. We dismiss this portion of plaintiffs' appeal. The court has not yet ruled on the issue, and, therefore, it is not ripe for appellate review. *See, e.g., Main Elec., Ltd v. Printz Servs. Corp.,* 980 P.2d 522 (Colo.1999).

## V.

We deny defendants' request that we impose sanctions against plaintiffs in connection with this appeal. *See* C.A.R. 38(d) ("If the appellate court shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee."). Although plaintiffs' appeal was unsuccessful, we do not consider their arguments to be so lacking in factual or legal justification as to warrant sanctions under C.A.R. 38(d). *See Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925 (Colo.1993).

The appeal from the court's orders on plaintiffs' fraud claim and defendants' request for sanctions is dismissed. In all other respects, the judgment is affirmed.

Judge PLANK* and Judge KAPELKE* concur.