PARKER, Justice
(dissenting).
I respectfully dissent from this Court’s decision to deny the petition for a writ of mandamus filed by the North Alabama Conference of the United Methodist Church (“the NAC”); the Central District, North Alabama Annual Conference, United Methodist Church, Inc. (“the District”); and Bobby Alford, district superintendent of the District (hereinafter sometimes referred to collectively as “the petitioners”). The petitioners have demonstrated that the First Amendment protections described in Ex parte Bole, 103 So.3d 40 (Ala.2012), apply to the present case. Consequently, the petitioners have demonstrated that the Jefferson Circuit Court (“the circuit court”) lacks subject-matter jurisdiction to hear this ease.
On January 10, 2013, the Reverend Terry Lee Greer, senior minister at Garden-dale-Mt. Vernon United Methodist Church, shot and killed his wife, Lisa Greer, and shot and wounded his daughter, Suzanna Greer. Subsequently, Suzan-na Greer, individually, and Gay Blackburn Maloney, the executrix of Lisa Greer’s estate (hereinafter referred to collectively as “the plaintiffs”), filed a complaint against the petitioners.
In their complaint, the plaintiffs alleged negligent hiring, supervision, and retention. The plaintiffs’ claims derive, in part, from the following facts:
“31. On or about September 28, 2012, an anonymous person reported to the [petitioners] that [Reverend Greer] was plagiarizing his sermons at Garden-dale-Mt. Vernon.
“32. From that point on, [the petitioners] commenced a much more intensive investigation that culminated with Alford’s October 10, 2012, recommendation that [Reverend Greer] undergo ... psychological testing and six (6) months of mental health counseling.
“33. On October 17, 2012 ..., Alford and [two] other District Superintendents met with [Reverend Greer] to confront him about the accusations of plagiarism and ... financial improprieties.
“34. On October 19, 2012 ..., Alford informed the executive committee of [the] NAC (called ‘the Cabinet’) about his recommendations, and urged the approval of those recommendations into an action plan. On behalf of [the] NAC, the Cabinet approved .,. Alford’s recommendations, including the requirement for psychological testing and six (6) months of mental health counseling.
“35. The Cabinet also approved a letter of reprimand for [Reverend Greer], contingent on Greer meeting certain requirements set by the Cabinet.
“36. At approximately the same time, [the petitioners] became aware that [Reverend Greer] was having memory problems.
[[Image here]]
*1208 “39. Despite the fact that ... Alford’s office was at [the] NAC’s headquarters on the campus of Birmingham Southern College, and was only a few minutes away from [Reverend Greer’s] home at the parsonage ,, Defendant Alford never met with [Reverend Greer] about the Cabinet’s decision about Greer’s discipline for the plagiarism and the financial improprieties.
“40. [The petitioners] never notified Gardendale-Mt. Vernon or the plaintiffs about the decisions that resulted from the Cabinet meeting of October 19, 2012.
“41. Defendant Alford attended several meetings at ... Gardendale-Mt. Vernon in the meantime, which was only approximately 5 minutes away from [Reverend Greer’s] home at the parsonage,
“42. Defendant Alford continued to let [Reverend Greer] remain in suspense about the outcome of the Cabinet’s decision despite the fact that Alford knew or should have known about [Reverend Greer’s] declining mental health.
“43. On or about the evening of January 9, 2013, [Reverend Greer] sent an email to ... Alford which begged for ‘help’ with his mental situation, which confessed that [Reverend Greer] had seen a psychiatrist the previous month related to his mental situation, and which pleaded for assistance.
“44. Defendant Alford responded the following morning, January 10, 201[3], with an email reply which basically chastised [Reverend Greer].
“45. The shootings occurred a few hours later the same day.”
In response to the plaintiffs’ complaint, the petitioners filed a motion to dismiss pursuant to Rule 12(b)(1), Ala. R. Civ. P., alleging that the circuit court lacked subject-matter jurisdiction. The petitioners alleged that
“[e]ach of [plaintiffs’ claims against [them] arises from, relates to, and concerns (1) the [NAC’s] investigation of complaints against [Reverend Greer] about his performance of duties as a minister, (2) Alford’s involvement in that investigation, (3) information gathered in that investigation, (4) the findings of that investigation, (5) information allegedly known to Alford, the District, and the [NAC] as a result of that investigation, and (6) its attempts to impose discipline upon [Reverend Greer] as a result of its investigative findings and the governing ecclesiastical law.”
The circuit court denied the petitioners’ motion to dismiss, and the petitioners filed the present petition for a writ of mandamus, which requests that this Court direct the circuit court to grant the petitioners’ motion to dismiss. The petitioners argue that this Court’s decision in Ex parte Bole controls the present case. Therefore, the petitioners argue, the circuit court lacks subject-matter jurisdiction over the claims in the plaintiffs’ complaint. I agree.
“Courts are constrained by the First Amendment of the United States Constitution from ‘intrud[ing] into a religious organization’s determination of ... ecclesiastical matters such as theological doctrine, church discipline, or the conformity of members to standards of faith and morality.’ ” Lott v. Eastern Shore Christian Ctr., 908 So.2d 922, 928 (Ala.2005) (quoting Singh v. Singh, 114 Cal.App.4th 1264, 1275, 9 Cal.Rptr.3d 4, 12 (2004)). Specifically, the First Amendment deprives a court of subject-matter jurisdiction over tort claims that are intertwined with ecclesiastical investigations or proceedings involving the employment or discipline of clergy. Ex parte Bole, supra.
In Ex parte Bole, the plaintiff was a pastor emeritus of a church and the defen *1209 dant was a lay member of the church. 103 So.3d at 42. After the lay member made statements to the church’s hierarchy (“the Conference”) concerning the pastor, the Conference initiated an investigation that ultimately led to the pastor being asked to refrain from further activities with the church. 103 So.3d at 48. The pastor sued the lay member, alleging defamation, invasion of privacy, and intentional infliction of emotional distress. 103 So.3d at 42. After the lay member’s motion to dismiss for lack of subject-matter jurisdiction was denied, the lay member filed a petition for a writ of mandamus with this Court.
This Court granted the lay member’s petition, holding that the trial court lacked subject-matter jurisdiction over the pastor’s claims. 103 So.3d at 72. We stated:
“It is clear that [the pastor’s] claims were intertwined with the underlying investigation by the Conference, with the resolution, and with the Conference’s ultimate decision to remove [the pastor and his son, a senior member]. Any attempt to adjudicate [the pastor’s] claim would require an impermissible inquiry into the Conference’s investigation of the complaints against [the pastor and his son],. into the results of the investigation conducted by the Conference, into the factual findings that formed the basis for .the resolution, and into the Conference’s decision to remove [the pastor and his son] from [the church]. ... For these reasons, the trial court did not have subject-matter jurisdiction over [the pastor’s] claims against [the lay member] by virtue of the First and Fourteenth Amendments to the United States Constitution.”
103 So.3d at 72 (emphasis added).[1]
In the present case, the plaintiffs’ negligent hiring, supervision, and retention claims are intertwined with the petitioners’ investigations and decisions concerning Reverend Greer’s employment and discipline. As set out above, the basis for the plaintiffs’ claims derives, in part, from the following: 1) Alford’s recommendation to the NAC concerning Reverend Greer after it was alleged that Reverend Greer was plagiarizing sermons; 2) the meeting of Alford and two others with Reverend Greer to confront Reverend Greer about the accusations of plagiarism; 3) the decision of the executive committee of the NAC (“the Cabinet”) that Reverend Greer should undergo psychological testing; 4) the Cabinet’s approval of a letter of repri *1210 mand, contingent on Reverend Greer’s meeting certain requirements set by the Cabinet; and 5) Alford’s response to Reverend Greer’s January 9, 2013, e-mail. Thus, as in Ex parte Bole, the plaintiffs’ claims would require an inquiry into the investigation of Reverend Greer, into the results of that investigation, into the factual findings that formed the basis of the petitioners’ decision regarding Reverend Greer, and, ultimately, into the petitioners’ decision to retain Reverend Greer in his capacity as a minister. Under Ex parte Bole, the circuit court, is without subject-matter jurisdiction to hear those tort claims.[2]
*1211 I note that the plaintiffs argue that Ex parte Bole is distinguishable from the present case. Specifically, the plaintiffs argue, in part, that Ex parte Bole is distinguishable because they filed their tort claims as third parties who are completely outside the purview and ecclesiastical supervision and jurisdiction of the church. This distinction is insignificant.
This Court’s decision in Ex parte Bole holds that a circuit court does not have jurisdiction over certain types of tort claims, specifically, those tort claims that are intertwined with ecclesiastical investigations or proceedings involving the employment or discipline of clergy. As demonstrated above, the plaintiffs’ tort claims are intertwined with ecclesiastical investigations and proceedings involving the employment and discipline of Reverend Greer. Therefore, the plaintiffs’ tort claims would trigger the same type of impermissible investigation prohibited by Ex parte Bole, regardless of the plaintiffs’ third-party status.
Because the petitioners have demonstrated that the First Amendment protections set out in Ex parte Bole are applicable to this case, I would grant the relief requested in the petition for the writ of mandamus. Accordingly, I respectfully dissent.

. Ex parte Bole was a case of first impression; cases from other jurisdictions, however, support this Court’s rationale in Ex parte Bole. See, e.g., Seefried v. Hummel, 148 P.3d 184, 188 (Colo.App.2005) (“As relevant here, the court determined that the statements which gave rise to plaintiffs' claims were issued within the 'constitutionally protected context’ of the First Amendment of the United States Constitution because they occurred during a church meeting that concerned the ‘investigation, discipline and discharge of Richard and James Seefried.' The court, consequently, declined to exercise subject matter jurisdiction over these claims. Plaintiffs contend that this was error as a matter of law. We agree with the trial court.”); Yaggie v. Indiana-Kentucky Synod Evangelical Lutheran Church in America, 860 F.Supp. 1194, 1199 (W.D.Ky.1994) ("The alleged defamatory statements were made in connection with the mediation process and strictly within the confines of the church. There can be no doubt that the matters in this case concerned the minister’s current and future employment relationship with the church. As such, they are matters of ecclesiastical concern, over which this court has no jurisdiction.”); Schmidt v. Bishop, 779 F.Supp. 321, 332 (S.D.N.Y.1991) (”[A]ny inquiry into the policies and practices of the Church Defendants in hiring or supervising their clergy raises the same kind of First Amendment problems of entanglement discussed above, which might.involve the Court in making sensitive judgments about the- propriety of the Church Defendants’ supervision in light of their religious beliefs,”).

. I note that numerous courts from other jurisdictions have held that a trial court lacks subject-matter jurisdiction over negligent hiring, supervision, and retention and other negligence claims when clergy are involved:
"State courts: Louisiana: Roppolo v. Moore, 644 So.2d 206, 207 (La.Ct.App.1994) (holding that negligence claims against clergy member and religious organization for alleged sexual relationship during the course of a counseling relationship were tantamount to impermissible clergy malpractice claim); Maine: Bryan R. v. Watchtower Bible & Tract Soc'y, 738 A.2d 839, 848 (Me.1999) (stating in dicta that ‘[a]llowing a secular court or jury to determine whether a church and its clergy have sufficiently disciplined, sanctioned, or counseled a church member would insert the State into church matters in a fashion wholly forbidden by the Free Exercise Clause of the First Amendment’); Swanson v. Roman Catholic Bishop of Portland, 692 A.2d 441, 444 (Me.1997) (holding that First Amendment barred negligent supervision claim against a church regarding sexual relationship between adult parishioner and priest during the course of a marital counseling); Michigan: Teadt v. Lutheran Church Missouri Synod, 237 Mich.App. 567, 603 N.W.2d 816, 822-23 (1999) (holding that claim of breach of fiduciary duty against pastor for sexual relationship with parishioner during the course of pastoral counseling was tantamount to impermissible clergy malpractice claim); Minnesota: Mulinix v. Mulinix, No. C2-97-297 (Minn.Ct.App. Sept. 22, 1997) (holding that negligent retention and supervision claims based upon a pastor's sexual contact with parishioners was barred by the First Amendment); Missouri: Gibson v. Brewer, 952 S.W.2d 239, 246-48 (Mo.1997) (holding that First Amendment barred child victim of sexual abuse by priest from bringing negligent hiring and supervision claims, but that First Amendment would not be violated by adjudication of claim of intentional failure to supervise priest); H.R.B. v. J.L.G., 913 S.W.2d 92, 98-99 (Mo.Ct.App.1995) (holding that First Amendment barred child victim of sexual abuse by priest from bringing breach of fiduciary duty claim against priest, church official, and church); Nebraska: Schieffer v. Catholic Archdiocese of Omaha, 244 Neb. 715, 508 N.W.2d 907, 911-13 (1993) (holding that First Amendment barred adult parishioner who engaged in sexual relationship with priest during the course of pastoral counseling from bringing intentional infliction of emotional distress, negligence, and breach of fiduciary duty claims); Wisconsin: L.L.N. v. Clauder, 209 Wis.2d 674, 563 N.W.2d 434, 445 (1997) (holding that First Amendment barred consideration of negligent supervision claim against diocese for sexual relationship between adult parishioner and priest while the priest was counseling the parishioner in his position as a hospital chaplain); Pritzlaff v. Archdiocese of Milwaukee, 194 Wis.2d 302, 533 N.W.2d 780, 790 (1995) (same).
“Federal courts: Dausch v. Rykse, 52 F.3d 1425, 1427 (7th Cir.1994) (holding that First Amendment barred parishioner's negligent hiring and supervision and breach of fiduciary duty claims against pastor and church for sexual contact that occurred between pastor and parishioner during the course of a counseling relationship); Ayon v. Gourley, 47 F.Supp.2d 1246, 1250 (D.Colo.1998) (holding that First Amendment barred negligent hiring and supervision claim against archdiocese for alleged sexual abuse of minor by priest), aff'd on other grounds 185 F.3d 873 (10th Cir.1999) (unpublished decision); Schmidt v. Bishop, 779 F.Supp. 321, 325-26 (S.D.N.Y.1991) (holding that First Amendment barred adult’s breach of fiduciary duty claim against pastor for actions that occurred when parishioner was a minor).”
*1211 Malicki v. Doe, 814 So.2d 347, 359 n. 10 (Fla.2002).