2015 COA 29

**R. Kirk MCDONALD, Plaintiff–Appellant,**

v.

**ZIONS FIRST NATIONAL BANK, N.A., Defendant–Appellee.**

**Court of Appeals No. 14CA0182**

Colorado Court of Appeals, Div. II.

Announced March 12, 2015

Rehearing Denied May 7, 2015

958

R. Kirk McDonald, Pro Se.

Bloom Murr Accomazzo & Siler, PC, Joseph A. Murr, Daniel R. Delaney, Maris S. Davies, Denver, Colorado, for Defendant–Appellee.

Opinion by JUDGE CASEBOLT

¶ 1 This appeal arises from a contractual dispute involving a construction loan agreement between plaintiff, R. Kirk McDonald, and defendant, Zions First National Bank, N.A. Plaintiff, appearing pro se, appeals the partial summary judgment in defendant's favor that dismissed his claims for breach of contract and breach of an implied covenant of good faith and fair dealing. Plaintiff also requests review of several orders the trial court issued to enforce its award of attorney fees to defendant. In addition, he seeks review of a number of ancillary issues.

¶ 2 We first address a jurisdictional issue and conclude that plaintiff's improper attempt to remove this litigation to the federal district court did not deprive the trial court or this court of jurisdiction to act. We then conclude that our review is limited to the summary judgment and any order substantively affecting it, and that the trial court did

not err in granting partial summary judgment in defendant's favor and denying his motion for new trial. Finally, we decline to address plaintiff's remaining contentions because they are not properly before us. Accordingly, we affirm.

## I. Factual Background and Procedural History

¶ 3 In 2007, plaintiff purchased a parcel of land with the intent to construct a building on it. To fund the purchase and subsequent construction, he entered into a loan transaction with defendant. When closing the loan, plaintiff signed a number of documents, including a construction loan agreement (Agreement).

¶ 4 Plaintiff submitted several applications for the disbursement of loan funds, both to reimburse himself for amounts he had paid and to pay others. Defendant rejected some of those applications and refused to disburse some of the loan funds. According to plaintiff, defendant's refusal to disburse all the loan funds he requested required him to pay certain vendors out of his own pocket. Eventually, plaintiff defaulted on the loan and defendant foreclosed on the property.

¶ 5 Plaintiff filed this action in 2009. In his amended complaint, plaintiff asserted that defendant breached the Agreement, and further breached an implied covenant of good faith and fair dealing. Defendant's amended answer asserted counterclaims against plaintiff for breach of contract and unjust enrichment.

¶ 6 After the close of discovery, defendant moved for summary judgment. Among other things, defendant proffered as exhibits an affidavit from one of its vice presidents and several of plaintiff's applications for the disbursement of loan funds. Plaintiff filed an unverified response to defendant's motion. Although he referred to several exhibits in his response, none of those exhibits appears in the record before us.

¶ 7 The trial court partially granted defendant's motion, dismissing plaintiff's two substantive claims. However, it denied that part of defendant's motion seeking judgment on its counterclaims, reasoning that genuine issues of material fact remained for trial. Soon thereafter, defendant filed and the court granted a motion to dismiss its counterclaims without prejudice, and it vacated the trial date. The trial court also granted defendant's request for attorney fees pursuant to the terms of the Agreement and entered judgment in favor of defendant in the amount of $102,267.75.

¶ 8 For approximately two and one-half years, defendant attempted to enforce the judgment and collect its attorney fees from plaintiff. As a part of its efforts, defendant noticed plaintiff's deposition pursuant to C.R.C.P. 69. After plaintiff refused to participate in a deposition scheduled for September 11, 2013, the trial court granted defendant's motion to compel his attendance at a second deposition.

¶ 9 On October 15, 2013, two days before the second deposition was scheduled to occur, plaintiff filed a notice of removal of the action in the United States District Court for the District of Colorado. He did not at that time file any document in the trial court evidencing the removal.

¶ 10 After defendant failed to appear at the October 17 deposition, the trial court ordered plaintiff to appear at a hearing on December 13, 2013, to show cause why he should not be held in contempt for failing to follow the trial court's previous orders. Plaintiff then filed a motion to preclude the hearing based on the filing of his notice of removal in the federal court. On December 12, 2013, plaintiff filed a notice of removal in the trial court.

¶ 11 At the December 13 hearing, the trial court denied plaintiff's motion to preclude the hearing. According to the uncontested account of defendant, the trial court orally ruled that plaintiff's attempt to remove this case was erroneous, and that it continued to retain jurisdiction.

¶ 12 The federal district court has never issued an order remanding the matter to the trial court. Nor is there any indication that the federal district court accepted the removal and lodged the case on its docket.

¶ 13 Pursuant to defendant's request, on December 23, 2013, the trial court certified

under C.R.C.P. 54 that its order granting partial summary judgment in defendant's favor was final. This appeal followed.

## II. Jurisdiction

¶ 14 We must first determine whether the trial court had jurisdiction to certify its order as final under C.R.C.P. 54(b) and, if it did, whether we have jurisdiction to review it.

### A. Plaintiff's Notice of Removal

¶ 15 As a general rule, removal of an action to federal court divests the state court of jurisdiction while the removal petition is pending in federal court. *See, e.g., Loctite Corp. v. Dist. Court,* 718 P.2d 252, 253 (Colo. 1986); *Blazer Elec. Supply Co. v. Bertrand,* 952 P.2d 857, 858 (Colo. App. 1998). Thus, because plaintiff filed his notice of removal before the trial court issued its C.R.C.P. 54(b) certification and the record does not reflect that the federal district court has issued an order of remand, it appears the trial court lacked jurisdiction to enter the C.R.C.P. 54(b) order.

¶ 16 However, "a number of ... courts have carved out exceptions to th[is] general rule focusing on situations where removal petitions were frivolous, duplicative[,] or abusive," *Astoria Fed. Sav. & Loan Ass'n/Fid. N.Y. FSB v. Lane,* 64 A.D.3d 454, 883 N.Y.S.2d 473, 475 (2009), and defendant asserts we should apply such an exception here. No Colorado appellate court has addressed the propriety of such an exception; accordingly, this issue presents a matter of first impression.

### 1. Standard of Review—Removal

¶ 17 This issue involves the construction of 28 U.S.C. § 1441(a) (2012) and 28 U.S.C. § 1446(d) (2012). We review de novo the application and construction of statutes. *In re B.B.O.,* 2012 CO 40, ¶ 6, 277 P.3d 818.

### 2. Law—Removal

¶ 18 Under section 1441(a), "any civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Removal becomes effective when "the defendant or defendants" file a notice of removal in the federal district court, file a copy of the notice with the clerk of the state court in which the action is pending, and "give written notice thereof to all adverse parties." 28 U.S.C. §§ 1446(d). Once removal becomes effective, "the [s]tate court shall proceed no further unless and until the case is remanded." *Id.*

¶ 19 "The intent of 28 U.S.C.A. § 1446 is to prevent state and federal courts from sharing jurisdiction over a case and thus avoid jurisdictional conflicts." *Motton v. Lockheed Martin Corp.,* 692 So.2d 6, 8 (La.Ct.App. 1997). Thus, as a general rule, removal of an action divests the state court of its jurisdiction over the dispute while the removal petition is pending in federal court. *See South Carolina v. Moore,* 447 F.2d 1067, 1073 (4th Cir. 1971); *see also Loctite Corp.,* 718 P.2d at 253 ("The law is clear that the removal to federal court divested the state court of jurisdiction.").

¶ 20 However, several courts have adopted a narrow exception to this general rule. *See, e.g., Astoria,* 883 N.Y.S.2d at 474–75; *Attig v. Attig,* 177 Vt. 544, 862 A.2d 243, 248–49 (2004); *Hunnewell v. Palm Beach Cnty.,* 786 So.2d 4, 5 (Fla.Dist.Ct.App. 2000). These courts have concluded that the state court does not lose jurisdiction where a notice of removal is " 'insufficient on its face to raise even a colorable claim' " of removability. *Hunnewell,* 786 So.2d at 5 (quoting *Farm Credit Bank of St. Paul v. Ziebarth,* 485 N.W.2d 788, 791 (N.D. 1992)); *see also F & L Drug Corp. v. Am. Century Ins. Co.,* 200 F.Supp. 718, 723 (D.Conn. 1961) ("It is well settled that, if, upon the face of the record, including the petition for removal, a suit does not appear to be a removable one, then the state court is not bound to surrender its jurisdiction.") (collecting cases).

¶ 21 In *Bell v. Burlington N.R.R. Co.,* 738 P.2d 949, 953–54 (Okla.Civ.App.1986), the court provided a lengthy historical analysis of the justification for this exception. The court noted that the 1948 enactment of 28 U.S.C. § 1441 "replaced removal statutes

that had been on the books for many years," *id.* at 954 (citing 28 U.S.C. §§ 72–76), and stated that the language currently found in 28 U.S.C. § 1446(d) " 'is derived from sections 72, 74 and 76 of Title 28,' U.S.C., 1940 edition," *id.* (quoting Historical and Revision Notes, U.S.C. Ann.). The court concluded that the origin of the phrase "proceed no further" that appears in 28 U.S.C. § 1446(d) was significant because the Supreme Court had previously interpreted the phrase "proceed no further" that had appeared in 28 U.S.C. § 72. *See id.* (citing *Metro. Cas. Ins. Co. v. Stevens*, 312 U.S. 563, 566, 61 S.Ct. 715, 85 L.Ed. 1044 (1941)).

¶ 22 In *Metropolitan*, the Supreme Court held that "[t]he rule that proceedings in the state court subsequent to the petition for removal are valid if the suit was not in fact removable is the logical corollary of the proposition that such proceedings are void if the cause was removable." 312 U.S. at 566, 61 S.Ct. 715.

¶ 23 Based on this interpretation, the *Bell* court concluded that the *Metropolitan* rule was "implicit in the old statute's proscription 'proceed no further'" and that "the new statute did not intend to and in fact did not alter the *Metropolitan* rationale or implications." *Bell*, 738 P.2d at 954.

¶ 24 Several courts have adopted a similar interpretation of the *Metropolitan* decision. *See, e.g., Hunnewell*, 786 So.2d at 6 (While it is true a state court loses jurisdiction if "on the face of the petition for removal ... the cause appeared to be removable, ... the converse of that statement is that if on the face of the petition absolutely no colorable claim for removal is made, then the state court need not recognize the removal." (internal quotation marks omitted)); *Wilson v. Sandstrom*, 317 So.2d 732, 740 (Fla. 1975) ("When removal is shown to be improper the [s]tate court's actions are not void."); *Wenrick v. Schloemann–Siemag Aktiengesellschaft*, 361 Pa.Super. 137, 522 A.2d 52, 55 (1987) ("We agree ... that ... continuation of the trial after attempted removal, was proper."); *but see Moore*, 447 F.2d at 1073 (concluding that the procedure established by the 1948 enactment of 28 U.S.C. § 1446 "ef-

fectively reversed the premise underlying the *Rives–Metropolitan* rule").

¶ 25 "The provisions of 28 U.S.C. § 1441(a) ... preclude removal by a plaintiff." *Nat'l Cigarette Serv. Co., Inc. v. Farr*, 42 Colo. App. 356, 358, 594 P.2d 603, 605 (1979). "The Supreme Court has long held that where a defendant asserts a counterclaim against a plaintiff[,] the plaintiff is not entitled to remove." *NCO Fin. Sys., Inc. v. Yari*, 422 F.Supp.2d 1237, 1239 (D.Colo. 2006) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)).

¶ 26 Based on the above authorities, we are persuaded that we should recognize a narrow exception to the general rule that precludes state courts from proceeding further when removal has been effected. We therefore hold that a Colorado court is not deprived of jurisdiction where a party's notice of removal to a federal court indicates, on its face and as a matter of law, that the party's attempt to remove the case was without the slightest color of right or merit.

### 3. Application—Removal

¶ 27 Here, Mr. McDonald has been a plaintiff in this action since he filed his initial complaint in 2009. Thus, as a plaintiff, he had no ability to remove this case to federal court. *See Nat'l Cigarette Serv. Co., Inc.*, 42 Colo.App. at 358, 594 P.2d at 605 (citing 28 U.S.C. § 1441(a) (1976)). The fact that defendant asserted counterclaims against him does not affect this conclusion. *See NCO Fin. Sys., Inc.*, 422 F.Supp.2d at 1239. Because of Mr. McDonald's status as a plaintiff, the case "was not in fact removable." *Metro.*, 312 U.S. at 566, 61 S.Ct. 715; *see also Jackson v. Oklahoma*, 172 Fed.Appx. 838, 840 (10th Cir. 2006) (Appellant, "as a party plaintiff, could not remove his action.").

¶ 28 Our conclusion is not affected by Mr. McDonald's attempt to recaption the case in the federal district court to designate himself as the defendant. Such a transparent device is ineffective and, in line with the exception we have adopted, did not deprive the trial court of jurisdiction. *See Cok v. Cok*, 626 A.2d 193, 194 (R.I. 1993) (plaintiff's argument that state family court lost jurisdiction due to

her removal to federal court was completely without merit where she was a plaintiff in the proceedings and she reversed the state court caption to qualify as a defendant before the federal court).

¶ 29 Thus, we conclude that plaintiff's attempted removal was without the slightest color of right or merit and did not deprive the trial court of jurisdiction to certify its partial summary judgment as final under C.R.C.P. 54(b), nor does it deprive us of jurisdiction to hear this appeal. *See Hunnewell,* 786 So.2d at 6; *Wenrick,* 522 A.2d at 55; *Wilson,* 317 So.2d at 740–41.

## B. C.R.C.P. 54(b) Certification

¶ 30 Whether we have jurisdiction to review this case also depends upon whether the trial court properly certified its partial summary judgment order under C.R.C.P. 54(b). *Richmond Am. Homes of Colo., Inc. v. Steel Floors, LLC,* 187 P.3d 1199, 1202 (Colo. App. 2008). The parties do not contest the certification on appeal, and we conclude that (1) "the decision to be certified is a ruling upon an entire claim for relief"; (2) the decision "is final in the sense of an ultimate disposition of an individual claim"; and (3) the trial court properly concluded that there was no "just reason for delay in entry of a final judgment on the claim." *Harding Glass Co., Inc. v. Jones,* 640 P.2d 1123, 1125 (Colo. 1982) (internal quotation marks omitted); *see Seefried v. Hummel,* 148 P.3d 184, 188 (Colo. App. 2005) (dismissing appeal as to claim dismissed without prejudice, but reviewing adjudication of other claims certified under C.R.C.P. 54(b)); *Ireland v. Wynkoop,* 36 Colo.App. 205, 216, 539 P.2d 1349, 1356 (1975) ("[T]he trial court had discretion to certify its adjudication of ... two [claims], in spite of ... pending counterclaims.").

## C. Scope of Appellate Jurisdiction

¶ 31 Satisfied that the trial court had jurisdiction to issue its C.R.C.P. 54(b) certification and that we have jurisdiction to hear this appeal, we must now determine the scope of our jurisdiction.

¶ 32 Plaintiff requests review of numerous issues on appeal. We conclude that we may only consider the order certified as a final appealable judgment under C.R.C.P. 54(b) and those matters that could substantively affect that judgment.

### 1. Standard of Review

¶ 33 The scope of a court's jurisdiction presents an issue of law that we review de novo. *See Coors Brewing Co. v. City of Golden,* 2013 COA 92, ¶ 59, —— P.3d —— (citing *People v. Efferson,* 122 P.3d 1038, 1040 (Colo. App. 2005)).

### 2. Law

¶ 34 The jurisdiction of the court of appeals is statutorily limited to the review of " 'final judgments ,of the district courts.' " *Steven A. Gall, P.C. v. Dist. Court,* 965 P.2d 1268, 1270 (Colo. 1998) (quoting § 13–4–102, C.R.S. 2014).

¶ 35 A trial court's order granting partial summary judgment remains subject to revision at any time before the trial court either enters judgment on all the claims at issue, or certifies its order as final under C.R.C.P. 54(b). *See Forbes v. Goldenhersh,* 899 P.2d 246, 249 (Colo. App. 1994).

¶ 36 For example, a party may seek revision of an order granting summary judgment by filing a motion pursuant to C.R.C.P. 59. *See Zolman v. Pinnacol,* 261 P.3d 490, 501–02 (Colo. App. 2011). The purpose of a C.R.C.P. 59 motion is to provide the trial court an opportunity to correct any errors it may have made when it granted summary judgment. *Graven v. Vail Assocs., Inc.,* 888 P.2d 310, 316 (Colo. App. 1994), *rev'd on other grounds,* 909 P.2d 514 (Colo. 1995). Thus, the trial court's decision to grant such a motion would substantively affect any previous judgment that was the subject of the C.R.C.P. 59 motion. *See In re Marriage of Warner,* 719 P.2d 363, 364 (Colo. App. 1986) (party may seek to alter, amend, or vacate judgment by filing a motion pursuant to C.R.C.P. 59).

¶ 37 The trial court's issuance of a C.R.C.P. 54(b) certification signals to the parties and the appellate court that the trial court "considers its order as finally deciding a particular claim" and will not consider the

claim further. *Steven A. Gall, P.C.*, 965 P.2d at 1270. Once the trial court properly certifies its order granting partial summary judgment as final under C.R.C.P. 54(b), an appellate court possesses jurisdiction to review the certified order and any C.R.C.P. 59 motions seeking revision of that order. *See Musick v. Woznicki*, 136 P.3d 244, 248–49 (Colo. 2006) (appellate court possesses jurisdiction over the certified order and any matters that are "relative to and ... affect" the certified order upon filing of an appeal regarding the certified order).

¶ 38 However, the trial court retains jurisdiction to rule on matters that have not been certified as final, are not related to, and do not affect the judgment that has been certified. *Id.* at 248. For example, the trial court retains authority to "render orders to enforce judgments" after the entry of a final appealable judgment. *Coors Brewing Co.*, ¶ 61 (citing *Schnier v. Dist. Court*, 696 P.2d 264, 267 (Colo. 1985) (holding trial court could consider a contempt motion to seek enforcement of a judgment despite pending appeal); *Lay v. Dist. Court*, 171 Colo. 472, 472, 468 P.2d 375, 375 (1970) ("It is elemental that where a judgment is not stayed by proper order or bond, there is no impediment against proceedings in the trial court for the purpose of executing on the judgment.")). "This is because 'such collateral post judgment proceedings do not challenge the propriety of the judgment itself.'" *Id.* (quoting *Molitor v. Anderson*, 795 P.2d 266, 268 (Colo. 1990)).

### 3. Application

¶ 39 In this case, the trial court has certified only its March 3, 2011, order granting partial summary judgment as a final order under C.R.C.P. 54(b). Consequently, the bounds of our statutory jurisdiction limit this appeal to review of that order and any orders on motions that challenge the propriety of summary judgment. *See Musick*, 136 P.3d at 248–49; *Steven A. Gall, P.C.*, 965 P.2d at 1271; *Coors Brewing Co.*, ¶¶ 60–61.

¶ 40 After the court issued its summary judgment order, plaintiff filed a motion for a new trial under C.R.C.P. 59(d)(4), a motion for a new trial pursuant to C.R.C.P. 59(d)(1),

and a motion to "open the court's judgment" under C.R.C.P. 59. Because these motions challenged the propriety of summary judgment and, had they been granted, would have served to alter, amend, or vacate the previously entered judgment, *see In re Marriage of Warner*, 719 P.2d at 364, we will review the court's decision on those motions as well. *See Musick*, 136 P.3d at 248; *Coors Brewing Co.*, ¶¶ 60–61.

¶ 41 However, the trial court retains jurisdiction to revisit or issue new orders regarding matters that do not stand to substantively affect the order granting partial summary judgment. *See Coors Brewing Co.*, ¶ 61. Specifically, the trial court retains jurisdiction regarding the enforcement of the attorney fee award because its orders do not challenge the propriety of the summary judgment itself. *See id.* Therefore, we will not review orders pertaining to those issues. *See id.*

¶ 42 Furthermore, we will not review any argument that was not presented to or ruled on by the trial court. *Sinclair Transp. Co. v. Sandberg*, 2014 COA 76, ¶ 73, — P.3d —. Nor will we address any "bald assertions of error that lack any meaningful explanation or support in legal authority." *Id.* at ¶ 74.

### III. Partial Grant of Summary Judgment

¶ 43 Although his opening brief is difficult to decipher, it appears plaintiff contends that the trial court misconstrued the facts when it granted partial summary judgment in favor of defendant. We disagree.

### A. Standard of Review

¶ 44 We review de novo an order granting summary judgment. *Yellow Jacket Water Conservancy Dist. v. Livingston*, 2013 CO 73, ¶ 6, 318 P.3d 454.

### B. Law—Summary Judgment

¶ 45 "Summary judgment is a drastic remedy which is to be granted only in the clearest of cases." *Disner v. United Bank of Cherry Creek, N.A.*, 780 P.2d 51, 54 (Colo. App. 1989). Relief in the form of summary judgment "is only appropriate if the pleadings, affidavits, depositions, or admissions es-

tablish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003).

¶ 46 "The burden is on the moving party to establish that no genuine issue of fact exists." *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251, 1256 (Colo. 1995). Once the movant satisfies its initial burden by establishing that no genuine issues of material fact exist, "the burden shifts to the nonmoving party to establish that there is a triable issue of fact." *McCormick v. Union Pac. Res. Co.*, 14 P.3d 346, 349 (Colo. 2000).

## C. Breach of Contract

¶ 47 Plaintiff's first claim for relief asserted that defendant breached the terms of the Agreement. We conclude the trial court properly granted summary judgment on this claim.

### 1. Law—Breach of Contract

¶ 48 "[A] party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (citations omitted); *but see Gen. Ins. Co. of Am. v. City of Colo. Springs*, 638 P.2d 752, 759 (Colo. 1981) ("If a breach causes no loss or if the amount of loss is not proved, 'then a small sum fixed without regard to the amount of loss will be awarded as nominal damages' ") (internal citations omitted).

¶ 49 "When performance of a duty under a contract is due any nonperformance is a breach." *Restatement (Second) of Contracts* § 235(2) (1979). Thus, "[t]o prevail on a claim for breach of contract, a party must show a contract was in existence and that the other party failed to perform some term of the contract." *Coors v. Sec. Life of Denver Ins. Co.*, 91 P.3d 393, 402 (Colo. App. 2003), *rev'd on other grounds*, 112 P.3d 59 (Colo. 2005).

¶ 50 "The 'performance' element in a breach of contract action means 'substantial' performance." *W. Distrib. Co.*, 841 P.2d at 1058. "A party has substantially performed when the other party has substantially received the expected benefit of the contract." *Stan Clauson Assocs., Inc. v. Coleman Bros. Constr., LLC*, 2013 COA 7, ¶ 9, 297 P.3d 1042.

### 2. Application—Breach of Contract

¶ 51 The trial court concluded that there was no genuine issue of material fact with respect to plaintiff's breach of contract claim. Specifically, the court stated that "[d]efendant ha[d] submitted evidence showing that it did not breach its contractual duties, and [p]laintiff ha[d] failed to refute this evidence." We agree with the trial court's assessment and the conclusion it reached.

¶ 52 The only written contract plaintiff cited in his amended complaint was the set of documents that made up the loan package. It appears the parties agree that the loan package included the Agreement, a document titled "Tips to Make Your Draws Run Smoothly" (TIPS), and a document titled "Residential Disbursement Procedures" (RDP).

¶ 53 The Agreement included a merger clause indicating that the "Agreement and the related loan documents" were the final expression of the agreement between the parties. That merger clause is enforceable. *Nelson v. Elway*, 908 P.2d 102, 107 (Colo. 1995). Accordingly, we limit our review to the terms contained in the Agreement, the TIPS document, and the RDP.

¶ 54 The Agreement established a procedure for the disbursement of loan funds. Under the terms of the Agreement, every application for loan funds had to "be ... executed by [plaintiff] and supported by such evidence as [defendant] shall reasonably require." In addition, the Agreement stated that "[plaintiff] shall apply only for disbursement with respect to work actually done by the General Contractor and for materials and equipment actually incorporated into the project."

¶ 55 The TIPS document indicated that each application for loan funds had to be signed by plaintiff and accompanied by invoices from the payee that supported the amount requested. If plaintiff submitted an application that sought reimbursement, the TIPS document also required plaintiff to submit a sales receipt reflecting that payment had been made to the vendor.

¶ 56 Likewise, the RDP indicated that all applications for loan funds were to be signed by plaintiff and accompanied by invoices. The RDP also required plaintiff to submit a copy of the invoice, a copy of the paid receipt or cancelled check, and a lien release signed by the payee with any request for reimbursement.

¶ 57 As an exhibit to its motion for summary judgment, defendant provided an affidavit signed by one of its vice presidents. *See* C.R.C.P. 56(a) (a defending party may move for summary judgment with supporting affidavits). The affiant stated that plaintiff had "never commenced construction ... at any time ... never poured a single yard of concrete for a foundation and never erected a single stick of lumber to construct ... the residence contemplated by the ... Agreement." The affiant also stated that while defendant "funded several draws for" plaintiff, it "refused to fund draws that were in violation of the [A]greement."

¶ 58 In addition to the affidavit, defendant provided three rejected applications for loan funds that plaintiff had submitted, and two applications that plaintiff had submitted and copies of checks indicating defendant had paid the funds requested in those applications.

¶ 59 The trial court concluded that the applications defendant had rejected did not comply with the terms of the Agreement, the TIPS document, or the RDP because they were unsigned, unaccompanied by any evidence or documentation, and contained no proof of any work done or materials incorporated. The court also concluded that defendant had made disbursements of loan funds when plaintiff complied with the terms of the Agreement.

¶ 60 Plaintiff did not contest the admissibility or authenticity of the documents described above, and we conclude that defendant satisfied its initial burden to establish that no issue of material fact existed. *See McCormick*, 14 P.3d at 349. Specifically, the affiant's statements indicating defendant had "funded several draws for" plaintiff, but "refused to fund draws that were in violation of the agreement" established that defendant had substantially performed under the terms of the Agreement. *See Sec. Life of Denver Ins. Co.*, 91 P.3d at 402; *Stan Clauson Assocs., Inc.*, ¶ 9. Thus, "the burden shift[ed]" to plaintiff "to establish that there [was] a triable issue of fact." *McCormick*, 14 P.3d at 349.

¶ 61 Plaintiff failed to meet his burden. "When a motion for summary judgment is submitted and supported by affidavit, the party opposing ... summary judgment cannot rely on the mere allegations [in the] pleadings, but must, by affidavit or otherwise as provided by C.R.C.P. 56, set forth specific facts showing a genuine issue of material fact." *McDaniels v. Laub*, 186 P.3d 86, 87 (Colo. App. 2008) (citing C.R.C.P. 56(e)); *accord Meuser v. Rocky Mountain Hosp.*, 685 P.2d 776, 779 (Colo. App. 1994); *GTM Invs. v. Depot, Inc.*, 694 P.2d 379, 381 (Colo. App. 1984). Statements contained in a party's brief that are not supported by an affidavit or otherwise attested under oath are not sufficient to satisfy this requirement. *Credit Serv. Co., Inc. v. Dauwe*, 134 P.3d 444, 446 (Colo. App. 2005).

¶ 62 Plaintiff filed a response to defendant's motion for summary judgment. However, plaintiff did not attest under oath to any of the statements contained in his response. And while plaintiff cited to several exhibits in his response, none of those exhibits appears in the record before us. Therefore, we have no basis to conclude that the exhibits would have created a genuine issue of material fact. *Cf. People v. Helmstetter*, 914 P.2d 474, 476–77 (Colo. App. 1995) ("It is the duty of the appellant to designate those portions of the trial court record which it deems necessary for review on appeal and to see that the record is properly transmitted." (citing C.A.R. 10(b))).

¶ 63 Because plaintiff did not provide an affidavit with his response and did not attest to the statements in it, the statements in defendant's affidavit prevail over the mere allegations in the amended complaint. *Daugaard Real Estate, Inc. v. Lewis*, 533 P.2d 935, 935 (Colo. App. 1975) (not published pursuant to C.A.R. 35). Furthermore, the affidavit and documents establish that defendant was entitled to judgment on the breach of contract claim as a matter of law.

¶ 64 Therefore, we conclude summary judgment was appropriate on plaintiff's claim for breach of contract. C.R.C.P. 56(e).

### D. Implied Covenant of Good Faith and Fair Dealing

¶ 65 Plaintiff's second claim for relief alleged that defendant had breached an implied covenant of good faith and fair dealing. We conclude that the trial court properly granted summary judgment on this claim.

#### 1. Law—Implied Covenant

¶ 66 "Every contract in Colorado contains an implied duty of good faith and fair dealing." *New Design Constr., Inc. v. Hamon Contractors, Inc.*, 215 P.3d 1172, 1181 (Colo. App. 2008) (internal quotation marks omitted). "A violation of the duty of good faith and fair dealing gives rise to a claim for breach of contract." *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006).

¶ 67 A plaintiff may rely on the duty of good faith and fair dealing "when the manner of performance under a specific contract term allows for discretion on the part of either party." *New Design Constr.*, 215 P.3d at 1181 (internal quotation marks omitted). "Discretion in performance occurs 'when the parties, at formation [of the contract], defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation." *City of Golden*, 138 P.3d at 292 (quoting in part *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995)).

¶ 68 "Good faith performance of a contract involves 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'"

*Amoco Oil Co.*, 908 P.2d at 498 (quoting in part *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo. App. 1994)).

¶ 69 "Each party to a contract has a justified expectation that the other will act in a reasonable manner in its performance." *Wells Fargo*, 872 P.2d at 1363. "When one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, the contract is breached." *Id.* (citation omitted).

¶ 70 The implied duty of good faith and fair dealing cannot, "[h]owever, ... contradict terms or conditions for which a party has bargained." *Amoco Oil Co.*, 908 P.2d at 498 (citing *Hubbard Chevrolet Co. v. Gen. Motors Corp.*, 873 F.2d 873, 876 (5th Cir. 1989).) "Nor does the duty ... inject substantive terms into the parties' contract." *Id.* at 507 n.6 (internal quotation marks omitted). "Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement." *Id.* (internal quotation marks omitted).

#### 2. Application—Implied Covenant

¶ 71 Because the implied covenant relates to the contract terms we have described above, there is substantial overlap as to the analysis and conclusion that applies to plaintiff's claims for breach of the implied covenant. With several exceptions, described below, the contract terms do not provide defendant with discretionary power to set or control the terms of performance. Hence, we need not separately analyze each and every asserted breach. However, two of plaintiff's assertions are sufficient to trigger review of certain discretionary terms of performance.

¶ 72 Under the Agreement, an approved "Cost Breakdown" allocated the total costs of plaintiff's project. The Agreement stated: "Changes in the Cost Breakdown may be made at any time [defendant], in its sole discretion, may determine. [Plaintiff] must submit any proposed changes in the Cost

Breakdown to [defendant] for review and approval."

¶ 73 This provision, by its terms, granted defendant discretion to make changes to the document. *See City of Golden*, 138 P.3d at 292. Therefore, plaintiff was entitled to rely on the implied duty of good faith and fair dealing to assert that defendant acted unreasonably or dishonestly with respect to changes to the Cost Breakdown. *New Design Constr.*, 215 P.3d at 1181.

¶ 74 Plaintiff contends defendant acted in bad faith when it amended the Cost Breakdown because it failed to secure his input or permission. However, the implied duty cannot inject new or substantive terms into the Agreement. *Wells Fargo*, 872 P.2d at 1363. The express terms of the Agreement do not require defendant to gain, or even seek, plaintiff's input or permission regarding changes to the Cost Breakdown. To inject these terms into the Agreement "would be to engraft upon the [A]greement a provision not agreed to by the parties." *Villa Sierra Condo. Ass'n v. Field Corp.*, 878 P.2d 161, 168 (Colo. App. 1994). And injecting such language would contradict the express terms of the Agreement indicating defendant could change the Cost Breakdown at "any time." *See Amoco Oil Co.*, 908 P.2d at 498.

¶ 75 We thus reject plaintiff's contention that the implied duty of good faith and fair dealing required defendant to secure his input or permission if and when it decided to change the Cost Breakdown.

¶ 76 Plaintiff also asserts defendant amended the Agreement without notifying him of the changes. Plaintiff argues that defendant acted in bad faith by doing so because defendant rejected at least one of plaintiff's applications for loan funds on the ground that the requested funds did not correspond to the items listed in the Cost Breakdown.

¶ 77 This assertion has arguable merit. Injecting a term requiring defendant to notify plaintiff of any changes to the Cost Breakdown would not contradict the terms of the Agreement. *See id.* And, according to plaintiff's assertions, the lack of notice de-prived him of his ability to gain the benefit of the Agreement. *See ADT Sec. Servs., Inc. v. Premier Home Protection, Inc.*, 181 P.3d 288, 295 (Colo. App. 2007) (to prevail on claim asserting breach of the implied covenant of good faith and fair dealing a plaintiff must establish that the defendant exercised the discretion granted to it under the contract and deprived plaintiff of the benefit of the contract as a result). Therefore, it is conceivable that the duty of good faith and fair dealing would have required defendant to notify plaintiff of any changes it made to the Cost Breakdown.

¶ 78 But plaintiff's claim still fails. The affidavit supplied by defendant stated that plaintiff's applications were rejected because they "were in violation of the [A]greement." None of the provisions in the Agreement conditions disbursement of loan funds on the Cost Breakdown. Thus, the affidavit must be read to state that plaintiff's applications were rejected for reasons other than the fact that they did not correspond to the Cost Breakdown. This conclusion is supported by the trial court's determination that each of the applications defendant provided with its motion were rejected because they were unsigned, unaccompanied by any evidence or documentation, and contained no proof of any work done or materials incorporated into any building.

¶ 79 Plaintiff did not provide the trial court with any evidence, let alone an affidavit, to support his response in opposition to summary judgment. Nor has plaintiff pointed to the existence of any such evidence in his briefs on appeal. For the reasons previously stated, plaintiff failed to adequately refute the statements contained in the affidavit supplied by defendant. *Daugaard Real Estate*, 533 P.2d at 935 (a statement in an affidavit controls against an allegation in the complaint where the affidavit stands uncontradicted (citing C.R.C.P. 56(e))). Therefore, plaintiff failed to meet his burden to establish a triable issue of material fact or to demonstrate that defendant was not entitled to judgment as a matter of law. *See id.*

¶ 80 Accordingly, we conclude that summary judgment was appropriate on plaintiff's

claim for breach of the implied covenant of good faith and fair dealing. C.R.C.P. 56(e).

¶ 81 To the extent plaintiff argues he should have been granted more time to obtain an affidavit to support his response brief, we reject his argument. Even if we were to construe his "motion for [an] extension of time to file [a] cross-motion for summary judgment" as such a request, plaintiff failed "to comply with C.R.C.P. 56(f) by filing an affidavit explaining why [he was] unable to obtain an affidavit ... in a timely manner." *McDaniels,* 186 P.3d at 88.

## IV. Motions for New Trial

¶ 82 Plaintiff filed three motions under C.R.C.P. 59 and attached an affidavit from his real estate agent to the first motion. He asserts the trial court erred in denying his motions. We disagree.

### A. Standard of Review

¶ 83 We review a trial court's ruling on a motion for new trial for an abuse of discretion. *Zolman,* 261 P.3d at 502. A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *Antolovich v. Brown Grp. Retail, Inc.,* 183 P.3d 582, 595 (Colo. App. 2007).

### B. Law

¶ 84 As previously stated, a party may file a motion under C.R.C.P. 59 to seek revision of a court's decision to grant summary judgment. *Zolman,* 261 P.3d at 501–02.

¶ 85 When considering an appeal premised on the grant of summary judgment, "[a] reviewing court applies the same standards as the trial court in determining whether summary judgment is warranted." *Timm v. Reitz,* 39 P.3d 1252, 1255 (Colo. App. 2001). Thus, we will not consider "arguments and evidence [that were] not presented to the trial court in connection with [the] motion for summary judgment." *Id.*

¶ 86 Additionally, an appellate court will not consider information contained in an affidavit submitted after the trial court entered summary judgment if the information contained in the affidavit does not constitute "newly discovered" evidence under C.R.C.P. 59(a)(4). *Mountainwood Condo. Homeowners Ass'n v. Cal–Colo.,* 765 P.2d 1066, 1069 (Colo. App. 1988); *see also Graven,* 888 P.2d at 316 ("Affidavits filed after the granting of a motion for summary judgment cannot be considered in a motion to reconsider.").

¶ 87 To prove that the evidence provided falls into the "newly discovered" category of C.R.C.P. 59(a)(4), the party providing the evidence must establish: (1) the evidence could not have been previously discovered by the exercise of reasonable diligence; (2) the evidence is material; and (3) if admitted, the result would probably have been different. *Aspen Skiing Co. v. Peer,* 804 P.2d 166, 172 (Colo. 1991).

### C. Application

¶ 88 The affidavit plaintiff provided with his first motion for a new trial was not filed within the time requirements of C.R.C.P. 56(c). Furthermore, in his motion for new trial, plaintiff did not attempt to demonstrate that the affidavit's contents were "newly discovered" evidence that could not have been previously discovered by the exercise of reasonable diligence, nor does he so contend in his opening brief before us. *See* C.R.C.P. 59(a)(4); *see also Conrad v. Imatani,* 724 P.2d 89, 94 (Colo. App. 1986) (trial court did not err in denying the plaintiff's motion for a new trial where the plaintiff failed to establish that evidence could not have previously been discovered with reasonable diligence). In addition, the record indicates that the trial court did not consider this material, as it summarily denied plaintiff's motion.

¶ 89 In light of these circumstances, we conclude that the trial court did not abuse its discretion by denying plaintiff's motions for a new trial. *See Mountainwood Condo.,* 765 P.2d at 1069.

## V. Remaining Assertions

¶ 90 Because our review is limited to the summary judgment and plaintiff's motions for new trial, we decline to address the remaining assertions set forth in plaintiff's opening brief, including but not limited to his contentions that reversal is warranted be-

cause a motions division of this court previously dismissed his appeal for lack of a final appealable judgment, and his contention that the trial court lacked jurisdiction to enter various enforcement orders after he filed previous notices of appeal.

## VI. Conclusion

¶ 91 The summary judgment and order denying the motion for new trial are affirmed.

JUDGE GRAHAM and JUDGE DUNN concur.