IN THE SUPREME COURT OF THE STATE OF DELAWARE

AMELIA GIFFORD,[1]      §
     § No. 40, 2023
     Respondent Below,      §
     Appellant,      § Court Below–Family Court
     § of the State of Delaware
     v.      §
     § File No.      CS20-01349
DYLAN MILLER,      § Petition Nos.    21-15124
     §      21-08615
     Petitioner Below,      §
     Appellee.      §
     §

Submitted: July 7, 2023
Decided: October 6, 2023

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

## ORDER

After consideration of the parties' briefs and record on appeal, it appears to the Court that:

1. The appellant, Amelia Gifford ("Mother"), filed this appeal from the Family Court's child-custody order dated October 20, 2022, and the Family Court's order awarding attorneys' fees to the appellee, Dylan Miller ("Father"), dated January 24, 2023. Having reviewed the parties' respective arguments, we affirm the Family Court's judgment.

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

2. Mother and Father are the parents of a minor girl, born in April 2019 (the "Child"). Father filed a petition for custody in March 2020 seeking sole legal custody and primary placement of the Child. Mother filed an answer and a counterclaim seeking joint legal custody and primary placement of the Child. The parties assembled for a hearing on December 8, 2020. After several hours of testimony, the parties reached an agreement, the terms of which were placed on the record and later entered as an order of the Family Court on February 22, 2021 (the "Custody Agreement"). Among other things, the parties agreed that: (i) they would follow a 2-2-3 custody schedule until Mother relocated to the New York City area, after which the parties would alternate custody every other week; (ii) in the event that either parent intended to have the Child cared for by an alternate caregiver for a period of time exceeding 90 minutes, the parent would give reasonable notice to the other parent, who then would have the option to keep the Child in his or her care for up to four hours (the right-of-first-refusal option, or "ROFR"); (iii) if the Child became seriously injured while in the care of one parent, the parent would notify the other parent as soon as practicable; and (iv) each parent would give the other parent written notice of any change of address.

3. In April 2021, Father filed a petition for a rule to show cause, alleging that Mother was in violation of the terms of the Custody Agreement because, among other things, Mother: (i) was insisting on sharing custody on an alternate weekly

basis even though she had not relocated to the New York City area; (ii) had not given notice to Father of her intent to use an alternate caregiver before doing so; (iii) failed to report to Father an injury that the Child suffered while in her care; and (iv) failed to give Father her updated address when she allegedly relocated to the New York City area. In June 2021, Father filed a petition to modify the Custody Agreement, alleging that it was in the Child's best interest for Father to have sole legal custody and primary placement of the Child. Mother responded and also sought primary placement of the Child.

4. On January 28, 2022, the Family Court held a hearing on Father's petitions. Father presented three witnesses. Father first called Courtney Mitchell, the Child's nanny since the Child was approximately four months old. Ms. Mitchell testified that (i) Father was a very caring and attentive father; (ii) the visitation schedule changed to week-to-week in March 2021 after Mother advised Ms. Mitchell that she was relocating to the New York City area; (iii) Ms. Mitchell babysat the Child while the Child was in Mother's custody seven times in March and April 2021; and (iv) Mother exercised her ROFR approximately twice a week when the Child was in Father's custody and Mother was living in New Jersey. Ms. Mitchell also described various ailments from which the Child had suffered and opined that Father had addressed the ailments with appropriate concern, whereas Mother had not. Ms. Mitchell specifically recalled one occasion when the Child was

3

extremely lethargic after returning from a visit with Mother, and she told the court that she believed that Father correctly decided to take the Child to the emergency room on that occasion.

5. Kay Miller, Father's neighbor in Dewey Beach, also testified. She opined that Father is a very involved and caring parent—he ensures that his home is safe for the Child, buys age-appropriate toys, and consults with Ms. Miller regarding the Child's health and overall well-being.

6. Finally, Father testified that (i) he has not lived in New York since March 2020; (ii) after Mother advised him that she was moving back to New York City in February 2021, he continued to see her around town and believed that she was staying at a local hotel; (iii) he learned from Ms. Mitchell that Mother was using Ms. Mitchell as an alternate caregiver when the Child was in Mother's care; (iv) Mother was receiving mental health services in Delaware; (v) he facilitates the Child's visits with his family as well as Mother's family, from whom Mother is estranged; (vi) he knows that Mother stays in Delaware during the weeks that the Child is in his care because she uses her ROFR so often; (vii) when Mother is in Delaware, she resides with Craig Colleton, who is prohibited from having contact with Father and the Child because of a criminal conviction; and (viii) Mother and Father disagree about the severity and proper course of treatment for the Child's various health issues. Father also testified that the Child participates in gymnastics,

4

story time at the library, swimming lessons, and horse-riding lessons while in his custody.

7.     Tsipy Weiss, who runs the daycare in which the Child is enrolled in New Jersey, testified on behalf of Mother. Ms. Weiss told the court that the Child is developmentally on-track and interacts well with Mother. On cross-examination, Ms. Weiss acknowledged that the daycare had been cited by the State of New Jersey for unsanitary conditions, but she claimed that the violations, which in her view were minor, had been resolved. Finally, the Family Court heard from Hannah Lowinger, with whom Mother has been living since she moved to New Jersey in May 2021. Ms. Lowinger testified that there is room for both Mother and the Child in Ms. Lowinger's home and that the Child has not suffered from any illness, with the exception of a minor cold, while in New Jersey. Ms. Lowinger acknowledged, however, that she did not know that Mother had taken the Child to a doctor in New Jersey on eight separate occasions. Following Ms. Lowinger's testimony, the court adjourned and advised the parties that it would schedule a second day for the hearing as soon as practicable.

8.     On February 24, 2022, the Family Court advised the parties that the second day of the hearing would be held on July 1, 2022. On April 25, 2022, counsel for Mother moved to withdraw, citing a breakdown in the attorney-client relationship

following the January hearing. Without objection from Mother or Father, the court granted the motion.

9. On June 1, 2022, Mother, now proceeding *pro se*, filed a motion for the appointment of a custody evaluator and a motion to continue the July 1 hearing, indicating, among other things, that she needed additional time to obtain new counsel. Father objected to both motions, and the court denied the motions on June 24, 2022. On June 30, 2022—the eve of the second day of trial—Mother filed a 44-page "Notice of Petition; and, Verified Petition for Warrant of Removal with Criminal Complaint upon Human Trafficking; Claim for Civil Damages" in the United States District Court for the District of Delaware. Mother also filed a "Notice of Removal to the United States District Court" in the Family Court. Finally, Mother emailed personnel at the Family Court and Father's attorney advising them that, with the filing of the federal complaint, the parties' custody matter had been removed to federal district court.

10. On July 1, 2022, Father appeared for the second day of the custody hearing, but Mother did not. At the outset of the hearing, the court addressed the federal complaint. Father's attorney informed the court that Mother's attempt to remove the action to federal court was ineffective because the federal court does not have subject-matter jurisdiction over child-custody matters and, in any event, the removal attempt was untimely. The court then heard limited testimony from Father

6

regarding the deterioration of the parties' ability to co-parent following the January hearing. Father testified that Mother told him that she would refuse to co-parent with him or attend any of the Child's events or activities. Although Mother had moved out of Ms. Lowinger's home, she was still residing in New Jersey. Mother also continued to visit Delaware during the weeks that the Child was in Father's care, but she was not exercising her ROFR to visit the Child. When visiting Delaware, Mother continued to stay at the house where Mr. Colleton resides. Father also testified that the Child was in need of surgery to insert ear tubes because of the Child's persistent ear infections. In April, Mother had refused to consent to the operation, citing the desire to obtain a second opinion that Mother had, to date, not yet obtained. The court took judicial notice of Mother's complaint filed in federal district court and concluded that Mother's complaint in that court had not removed the child-custody action from the Family Court.

11. At the conclusion of the hearing, the court granted Father's request for an emergency *ex parte* order awarding temporary physical placement of the Child to Father and allowing Mother to have supervised weekly visitation with the Child at the Georgetown Visitation Center. On July 7, 2022, the court granted Father exclusive decision-making authority regarding the Child's need for ear-tube surgery and any follow-up treatment (the "Surgery Order"). Mother filed a motion for

reconsideration of the Surgery Order, claiming that the administration of general anesthesia posed a grave threat to the Child's health.  The court denied the motion.

12.    On October 20, 2022, the Family Court entered an order awarding the parties joint legal custody, giving Father primary placement of the Child and final decision-making authority with regard to the Child's medical care and education, and establishing a visitation schedule for Mother.[2]  The court also granted in part Father's petition for a rule to show cause, finding that Father had established that Mother had violated the Custody Agreement by (i) changing the visitation schedule before she relocated to the New York City area in May 2021, and (ii) failing to give Father notice that she intended to use an alternate caregiver while the Child was in her custody on seven occasions.  Finally, the court ordered Mother to reimburse Father for the attorneys' fees and costs that he incurred in connection with the petition for a rule to show cause.  As part of its ruling, the court ordered the parties to "continue to abide by the February 22, 2021 Custody Agreement, in all other respects not inconsistent" with its decision.

13.    By Memorandum Opinion and Order dated November 8, 2022, the United States District Court for the District of Delaware *sua sponte* remanded the case to the Family Court for lack of subject matter jurisdiction.[3]

---

[2] The court also found that Mother's visits with the Child no longer needed to be supervised.
[3] App. to Reply Br. at A296–304.

8

14. Father filed a timely motion to reargue the Family Court's decision, asking that the court's decision be amended to (i) clarify that the decision does not include the ROFR provision contained in the Custody Agreement, (ii) change the visitation-exchange location, and (iii) clarify when visitation exchanges are to take place during the Child's summer vacation. On January 23, 2023, the Family Court granted the motion to reargue to clarify that the ROFR provision of the Custody Agreement no longer was a part of the parties' custody arrangement and that visitation exchanges during the Child's summer vacation would take place on Tuesdays. The Family Court denied the motion to reargue to the extent that Father sought to change the visitation-exchange location. Finally, on January 24, 2023, the Family Court ordered Mother to reimburse Father for reasonable attorneys' fees in the amount of $2,090.00. Mother then filed this appeal.

15. Our review of a decision of the Family Court extends to the facts and law, as well as inferences and deductions made by the trial judge.[4] Our duty is to review the sufficiency of the evidence and to test the propriety of the findings.[5] Findings of fact will not be disturbed on appeal unless they are determined to be clearly erroneous.[6] We will not substitute our opinion for the inferences and

---

[4] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[5] *Id.*
[6] *Id.*

9

deductions of the trial judge if they are supported by the record.[7]  If the Family Court correctly applied the law to the facts, we review its decision for abuse of discretion.[8]

16.    After a custody consent order has been entered by the Family Court, it may be modified at any time in accordance with the best-interests standards set forth in 13 *Del. C.* § 722(a).[9]  The Family Court must tailor its custody order to "permit and encourage the child to have frequent and meaningful contact with both parents" unless it finds that the child's contact with one parent would endanger the child's physical health or impair her emotional development.[10]

17.    On appeal, Mother raises four arguments: (i) the Family Court had no jurisdiction to consider the pending petitions after Mother removed the action to federal district court; (ii) the Family Court lacked subject-matter jurisdiction because the Child's home state is New Jersey; (iii) the Family Court erroneously shifted the burden of proof from Father to Mother; and (iv) there was no basis to support the Family Court's findings of contempt and award of attorneys' fees.  Mother's arguments are without merit.

18.    Mother first argues that her filing of the "Notice of Petition; and, Verified Petition for Warrant of Removal with Criminal Complaint upon Human

---

[7] *Id.*

[8] *Clark v. Clark*, 47 A.3d 513, 517 (Del. 2012).

[9] 13 *Del. C.* § 729(b).

[10] 13 *Del. C.* § 728(a).

Trafficking; Claim for Civil Damages" in federal district court divested the Family Court of jurisdiction to consider Father's petitions. There are several flaws in Mother's argument. First, a defendant may remove a civil action to federal court only if the federal court would have original jurisdiction to hear the matter in the first instance.[11] The courts have long held that federal courts will not exercise jurisdiction over child-custody matters.[12] Indeed, the District Court concluded that it lacked subject-matter jurisdiction and remanded this case to the Family Court for precisely that reason.[13] Second, a notice of removal of a civil action must be filed within 30 days of its receipt by the defendant.[14] Here, Mother was served with both the petition for a rule to show cause and the petition for custody modification in May 2021—well over a year before she attempted to remove the matter to federal court. Simply put, Mother's attempt to remove this matter to federal court was without merit because the federal court clearly lacked jurisdiction to hear this case and the

---

[11] *See* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.").

[12] *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 38 (2d Cir. 2021) ("As a general matter, the domestic relations exception provides that federal courts will not exercise subject matter jurisdiction where a federal court is asked to . . . award custody of a child." (internal quotation marks and citation omitted)).

[13] App. to Reply Br. at A299–301.

[14] 28 U.S.C. § 1446(b).

notice of removal was untimely. Under these circumstances, the notice of removal did not divest the Family Court of its jurisdiction to rule on the pending petitions.[15]

19. Mother next argues that the Family Court lacked subject-matter jurisdiction over the custody modification proceeding because New Jersey is the Child's home state. Because Mother did not raise this argument below, we review it for plain error.[16] We find no such error here. Under the Uniform Child Custody Jurisdiction and Enforcement Act, the Delaware Family Court has jurisdiction over a custody action if Delaware is the Child's home state.[17] It is undisputed that the Child, who was born in Delaware in April 2019, had been living in Delaware for six consecutive months before Father filed his petition for custody in March 2020, and continued to live in Delaware (with both parents) until the Family Court entered the

---

[15] *ClipperJet Inc. v. Tyson*, 251 Cal. Rptr. 3d 34, 40 (2019) (holding state court not deprived of jurisdiction where notice of removal was frivolous or duplicative); *McDonald v. Zions First Nat'l Bank, N.A.*, 348 P.3d 957, 962 (Colo. App. 2015) (holding state court "is not deprived of jurisdiction where a party's notice of removal to a federal court indicates, on its face and as a matter of law, that the party's attempt to remove the case was without the slightest color of right or merit"); In connection with this argument, Mother claims that the Family Court judge must be recused from any further proceedings related to the parties' custody arrangement. Because Mother failed to raise this argument to the Family Court in the first instance, we review it for plain error. Supr. Ct. R. 8. We find no plain error here. The Family Court judge's determination that the court had jurisdiction to entertain the pending petitions was not evidence of extra-judicial bias against Mother requiring recusal. *See Los v. Los*, 595 A.2d 381, 384–85 (Del. 1991) ("To be disqualified the alleged bias or prejudice of the judge must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." (internal quotation marks and citation omitted)).

[16] Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.").

[17] 13 *Del. C.* § 1920(a).

12

Custody Agreement as a court order on February 22, 2021.[18] Accordingly, the Family Court had (and has) continuing and exclusive jurisdiction over the modification of the Custody Agreement provided either the Child or at least one parent continues to live in Delaware throughout these proceedings.[19] Because Father has continued to reside in Delaware, the Family Court had jurisdiction to modify the Custody Agreement.

20. Third, Mother contends that the Family Court improperly shifted the burden of proof to her when it was Father who sought modification of the Custody Agreement. In essence, Mother argues that it was not in the Child's best interests to modify the Custody Agreement. Under 13 *Del. C.* § 722, which lists eight factors to guide the court's analysis, the Family Court is required to determine legal custody in accordance with the Child's best interests.[20] The weight accorded each factor will be different in any given proceeding, and "[i]t is quite possible that the weight of one factor will counterbalance the combined weight of all other factors and be outcome determinative in some situations."[21] Here, the Family Court carefully considered all the Section 722 factors and found that four of the factors—factor three

---

[18] *See* 13 *Del. C.* § 1902(7) (defining the "home state" for a child older than six months as "the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child custody proceeding").

[19] 13 *Del. C.* § 1921(a).

[20] *See* 13 *Del. C.* § 722(a) ("The Court shall determine the legal custody and residential arrangements for a child in accordance with the best interests of the child.").

[21] *Fisher v. Fisher*, 691 A.2d 619, 623 (Del. 1997).

13

(the Child's interaction with her parents, grandparents, and any persons who may significantly affect the Child's best interests), factor four (the Child's adjustment to her home, school, and community), factor five (the mental and physical health of all individuals involved), and factor six (the parties' past and present compliance with their parental rights and responsibilities to the Child)—weighed in favor of awarding Father primary placement of the Child. The court found the remaining factors either irrelevant or neutral. Because Mother sought to relocate the Child to New Jersey, the Family Court also considered the factors enumerated in 13 *Del. C.* § 734[22] and found that they did not support relocation. The record reflects that the Family Court considered the relevant factors and made factual findings that are supported by the record. We find no abuse of discretion in the Family Court's decision to award primary placement of the Child to Father.

21. Finally, Mother claims that the Family Court erred by finding Mother in contempt of court for failing to comply with the terms of the Custody Agreement and directing her to compensate Father for the attorneys' fees he incurred filing the petition for a rule to show cause. Mother essentially argues that Father's entire petition was frivolous because the court found that Father had not proven certain allegations contained therein. We have reviewed the record carefully and are

---

[22] 13 *Del. C.* § 734 (identifying factors to be considered when a party proposes the relocation of a child for a period of 60 days or more involving a move outside of Delaware).

14

satisfied that the court's conclusion was amply supported by the evidence. The Family Court therefore did not abuse its discretion by directing Mother to reimburse Father for the fees he incurred to pursue the petition.[23]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

/s/ Abigail M. LeGrow
Justice

---

[23] *See Tanner v. Allen*, 149 A.3d 1026, 2016 WL 6135339, at *2 (Del. Oct. 21, 2016) (TABLE) (noting that the Family Court has broad discretion to award attorney fees and costs).